D. W. KOSTOHRYZ AND ANOTHER v. GEORGE McGUIRE.

212 N. W. 2d 850.

November 16, 1973—Nos. 43850, 44001.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne,* and *O. C. Adamson II,* for appellant.

*Collins & Buckley, Theodore J. Collins,* and *Morley Friedman,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

PER CURIAM.

Plaintiffs, as owners, and defendant, as architect, in the spring of 1967 entered into a contract on a standard form used by architects for the design of a home. Reduced to a minimum, the essential facts are: The owners described for the architect certain features they wanted in the home and advised him they were prepared to spend $30,000 for its construction. Under the contract, the architect was called upon to design the home and submit a "Statement of Probable Construction Cost based on current area, volume or other unit costs."

The estimated cost prepared by the architect and accepted by the owners was $39,973. The owners, with the knowledge and consent of the architect, acted as their own contractor. Construction was carried out over about a 4-year period in a piecemeal fashion. The owners spent for a partially completed home the sum of $63,863. There was some expert testimony submitted by the owners that at least $19,000 to $20,000 of additional labor and materials would be required to complete the

house in accordance with the architect's plan and that the market value of the partially completed structure was $52,000 to $55,000.

This action, brought by the owners against the architect, was pleaded as an action to recover damages for the alleged malpractice of defendant. The case was tried as a malpractice action and also as an action to recover damages for breach of contract. The issues, however, as we finally conclude from a study of the record, were submitted to the jury essentially on the theories of negligent design and of a negligent breach of a provision of the contract requiring the architect to submit an estimate of probable construction costs. They were submitted in the form of a special verdict consisting of four separate questions.

The first question was whether defendant was negligent in the design of a skylight for the home and, if so, the damages suffered thereby. Similarly submitted were the issues of the negligence of defendant in the design of the heating system and the damages resulting. The third question asked the jury to pass on plaintiffs' claim that defendant was negligent in substantially underestimating the cost to build the home and plaintiffs' resulting damages. The fourth question concerned defendant's counterclaim for unpaid professional services.

The jury found in favor of plaintiffs on all four questions and awarded separate damages for the negligent design of the skylight ($850) and heating plant ($2,220) and for negligent underestimation of construction costs ($7,000). Defendant was denied recovery for claimed unpaid fees for professional services. After denial of defendant's post-trial motions, the damages awarded with respect to the skylight and the heating system were paid by defendant, thus rendering moot two of the most litigated issues.

This appeal is from a denial of the usual blended motions, and our review is limited to the issues raised by plaintiffs' claim that defendant was negligent in underestimating the cost of building the home. A review is also sought by defendant on his claim for professional fees.

Defendant takes two basic positions. His first contention is that the trial court was in error in submitting the issue of liability absent expert testimony supporting plaintiffs' alleged claim that he failed to exercise the degree of skill and care ordinarily possessed and exercised by an architect in the performance of his professional duties. Secondly, he contends that the proximate cause of the loss was the owners' decision to act as their own contractor and proceed with the construction in a piecemeal fashion over a period of years and that the issue of damages was thus submitted on an erroneous theory. At trial, defendant urged that the issue of damages be submitted in terms permitting the jury

to compare the negligence of the owners with that of the architect. This position seems to have been abandoned on appeal and the issue is thus not here considered in that form but rather as submitted to the jury in the form of plaintiffs' duty to mitigate damages.

Defendant argues also that the architect's comprehensive and detailed estimates were not presented as guaranteed or firm figures— rather, they were represented as expressions of the architect's opinions. In this sense defendant raises a question of the interpretation of the contract. Apart from the provisions of the contract which impose on the architect during the "Schematic Design Phase" the duty to "submit to the Owner a Statement of Probable Construction Cost based on current area, volume or other unit costs"; during the "Design Development Phase" the duty to "submit to the Owner a further Statement of Probable Construction Cost"; and during the "Construction Documents Phase," upon completion of working drawings and specifications, the duty to "advise the Owner of any adjustments to previous Statements of Probable Construction Cost indicated by changes in requirements or general market conditions," defendant points out this clause:

"Statements of Probable Construction Cost and Detailed Cost Estimates prepared by the Architect represent his best judgment as a design professional familiar with the construction industry. It is recognized, however, that neither the Architect nor the Owner has any control over the cost of labor, materials or equipment, over the contractors' methods of determining bid prices, or over competitive bidding or market conditions. Accordingly, the Architect cannot and does not guarantee that bids will not vary from any Statement of Probable Construction Cost or other cost estimate prepared by him."

The case of Durand Associates, Inc. v. Guardian Investment Co. 186 Neb. 349, 183 N. W. 2d 246 (1971), was one to recover fees for professional engineering services rendered pursuant to a contract. Because the construction bids were substantially in excess of the alleged estimates, no construction was performed. In considering the case, the court made the following observations (186 Neb. 353, 183 N. W. 2d 250):

"* * * It strains credulity to believe any businessman or private corporation would enter into a substantial building project without insisting on some estimate of the cost. Plaintiff's expert witness testified that a cost estimate is valuable information to give a client before entering into a contract, and that it would be very unusual for an architect not to discuss costs, *for estimating costs are a part of the design of a project.*" (Italics supplied.)

In the Durand case, the plaintiff relied for recovery on two provisions of the contract, which read as follows (186 Neb. 354, 183 N. W. 2d 250):

Article 4: "If any work designed or specified by the Architect is abandoned or suspended, in whole or in part, the Architect is to be paid for the service rendered on account of it."

Article 8: "When requested to do so, the Architect will furnish preliminary estimates on the cost of the Project, but he does not guarantee such estimates."

The court concluded as follows (186 Neb. 354, 183 N. W. 2d 250):

"We interpret article 8 to mean that the architect does not guarantee the exact figure but only represents that the estimate furnished is a reasonable approximation of the cost of the project. If, as the plaintiff seems to infer, it means that an architect will under no circumstances be bound by his estimate, we would consider it contrary to public policy because it would mean that no matter how large the bid for doing the work, defendants would be obligated to pay an architectural fee based on that amount. Reading the contract as submitted, we conclude the intent of it to be that any estimate furnished is a reasonable cost estimate.

\* \* \* \* \*

"\* \* \* We prefer to hold that an architect or engineer may breach his contract for architectural services by underestimating the construction costs of a proposed structure. The rule to be applied is that the cost of construction must reasonably approach that stated in the estimate unless the owner orders changes which increase the cost of construction. It is ordinarily for a jury to say whether the actual cost is within a reasonable range of the estimated cost unless, as here, the excess is so great that the court can deal with it as a matter of law."

We believe and hold in the instant case that ample evidence supports the jury's verdict that the architect breached a condition of the contract. "The substance, spirit, and purpose of an agreement, rather than its language and form, must control the construction of such agreement." 4 Dunnell, Dig. (3 ed.) 1972 pocket part, § 1827.

That there was a gross underestimation of costs cannot be disputed. The cost estimate prepared and submitted, admittedly without consulting suppliers, was in the amount of $39,973. The actual costs exceeded $63,000 with the additional cost of up to $20,000 for completion of the house. The fact that the costs exceeded the estimate substantially was sufficient, without the aid of an expert, to prove a breach of the architect's contractual duty to render to the owners a reasonably accurate

statement of probable construction costs. This issue involved such an elementary matter, expert testimony was not necessary. See, Johnson v. Arndt, 186 Minn. 253, 243 N. W. 67 (1932); Prosser, Torts (4 ed.) § 32, p. 164.

The duty and liability of an architect, whether sounding in tort or arising out of a breach of a contract, is measured as stated in Gammel v. Ernst & Ernst, 245 Minn. 249, 254, 72 N. W. 2d 364, 367 (1955). In that case, involving the liability of public accountants, this court said:

"* * * [T]hey would be required to perform the services for which they were engaged in good faith and with reasonable care and competence and would be liable for damages occasioned by any failure to do so."

As to the consequences of an architect's underestimating costs, the following is stated in 5 Am. Jur. 2d, Architects, § 23:

"An architect who substantially underestimates, through lack of skill and care, the cost of a proposed structure, which representation is relied upon by the employer in entering in the contract and proceeding with construction, may not only forfeit his right to compensation, but may become liable to his employer for damages. However, one to whom an architect gives an estimate of cost may not recklessly proceed to make contracts which make the cost of construction far above that estimated and then hold the architect responsible for the surplus expenditure." [1]

The court submitted the issue of damages in three separate phases in the instructions as follows:

---

[1] Annotation, 20 A. L. R. 3d 778, contains many cases setting forth the rule of damages applicable to the failure of an architect in underestimating building costs. The following statements may be found in the annotation (pp. 783, 785, 786): "Several decisions support the rule that an architect cannot recover compensation on the contract if the actual or probable cost of construction exceeds the agreed maximum cost."

"Many courts have adopted the rule that an architect cannot recover compensation on the contract if the actual or probable cost of construction substantially exceeds the agreed maximum cost."

"In cases where the building contract contained a cost figure expressed in terms of an approximation or estimate, many courts have allowed the architect or building contractor to recover compensation, even though the actual or probable cost of construction exceeded the agreed maximum."

"In assessing any damages in this case, if you find that such damages do exist either for the Plaintiffs or for the Defendant, in your consideration of those damages you are to award and fix such a sum of money which will fairly, fully and reasonably compensate the parties for their damages. In that regard you are further instructed that an architect who substantially underestimates through the lack of skill and care the cost of a proposed structure, which representation as to cost is relied upon by the owners in entering the contract and proceeding with the construction, may not only forfeit his right to compensation but he may also become liable to the owner for damages.

\* \* \* \* \*

"If you find that because of a failure to use ordinary care and skill that the Defendant McGuire substantially underestimated the cost of the structure built by the Plaintiffs, and if you find that the Plaintiffs relied upon those estimates, then you'll determine what damages should be awarded to the Plaintiffs for this failure. The measure of damages in this area is not the excess costs of the structure, but rather is the difference between the total cost of the property to date and that amount of money which a prudent person would pay for the property in its present condition.

\* \* \* \* \*

"\* \* \* All right. Relative to the question of damages, as I previously mentioned them to you, it was called to the Court's attention that I did overlook one instruction which you must consider along with all other instructions which I have given to you in the area of damages.

"If you find that the Kostohryzs, the Plaintiffs in this case, are entitled to recover damages for harm to their property, in fixing the amount thereof you should not include any loss which the Kostohryzs could have prevented by reasonable care and diligence."

In our view, all of the elements to be considered by the jury to determine the issues of liability and damages are contained in the foregoing portion of the court's instructions. Considering the uncertainty at trial concerning the theories of liability and defense with respect to each of plaintiffs' claims, the court's instructions nevertheless comply with the standard as stated in Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 421, 47 N. W. 2d 180, 187 (1951), as follows:

"All that is required in the way of instructions is that the charge as a whole convey to the jury a clear and correct understanding of the law of the case. The charge should not assume the existence of facts in controversy, or lay too much emphasis on particular facts or the testimony

of particular witnesses. It is the duty of the court to lay down the law according to its own interpretation of it and not necessarily in accordance with the interpretation of counsel. Considerable latitude must be allowed the trial court in the language used so long as the substance of the law is correctly stated."

The evidence amply supporting the jury's determination of fact issues relating to defendant's liability for underestimating costs, and the court's instructions on the measure of damages being in accordance with controlling legal principles, the orders appealed from are affirmed.

Affirmed.

MR. JUSTICE MACLAUGHLIN took no part in the consideration or decision of this case.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.