Russell BOWER, et al., Plaintiffs,

v.

The BUNKER HILL
COMPANY, Defendant.

Russell BOWER, et al., Plaintiffs,

v.

GULF RESOURCES & CHEMICAL
COMPANY, Defendant.

Nos. C–82–412 RJM, C–85–87 RJM.

United States District Court,
E.D. Washington.

Feb. 4, 1986.

Stephen Berzon, Geo. Harris of Altshuler & Berzon, San Francisco, Cal., Robert H. Gibbs, Gibbs, Douglas, Theiler & Crachler, Seattle, Wash., for plaintiffs.

Eugene I Annis of Lukins & Annis, Spokane, Wash., William F. Boyd of Evans, Keane, Koontz, Boyd and Ripley, Kellogg, Idaho, for defendant.

## ORDER

ROBERT J. McNICHOLS, Chief Judge.

Present and future pensioners of the Bunker Hill Company have brought this action to obtain reinstatement of their medical insurance and to obtain damages for its alleged wrongful termination. The complaint seeks relief under Sections 502(a)(1)(B), (a)(2) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3) and Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Before the court is the plaintiffs' Motion for Leave to Amend Pursuant to Rule 15 and plaintiffs' Motion For Certification of this litigation as a class action pursuant to Rule 23 Fed.R. Civ.P. Also before the court is the defendant's Motion to Strike plaintiffs' jury demand.

## MOTION FOR LEAVE TO AMEND

The facts of this lawsuit are more thoroughly set out in other portions of this memoranda. At this point suffice it to say that this case involves the termination of

medical benefits which were provided to present and future pensioners of the Bunker Hill Company. These benefits were terminated by Bunker Hill in the Spring of 1982 when an economic downturn forced the company's closure. The essence of plaintiffs' claims is that the medical benefits being provided by Bunker Hill were vested and thus could not be unilaterally terminated by Bunker Hill.

Plaintiffs seek to amend their complaint to add two additional parties, Bunker Limited and Jack Kendrick. Bunker Ltd. is a partnership which purchased substantially all of the assets of Bunker Hill in 1982. Mr. Kendrick was the chief executive officer of Bunker Hill at the time of its closure and is presently one of the limited partners in Bunker Ltd. By this amendment, plaintiff seeks to impose liability against both Bunker Ltd. and Kendrick based upon their alleged status as fiduciaries of the Bunker Hill retirement plan. An additional claim is made against Bunker Ltd. based upon the asset purchase agreement which it entered into with Bunker Hill.

This circuit has consistently adhered to the policy of construing motions to amend pursuant to Fed.R.Civ.P. 15 with "extreme liberality." *United States v. Webb,* 655 F.2d 977 (9th Cir.1981). In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) the Supreme Court identified four factors as relevant to the determination of whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party. *Id.* at 182, 83 S.Ct. at 230. These factors are not treated with equal weight. As was explained by the Ninth Circuit in *Hurn v. Retirement Fund Trust,* 648 F.2d 1252 (9th Cir.1981):

> Delay alone does not provide sufficient grounds for denying leave to amend: 'where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is

an abuse of discretion to deny such a motion.' (citation omitted).
*Id.* at 1254.

■ This action was commenced in July of 1982. Plaintiffs' Motion to Amend was not filed until May of 1985. However, a substantial portion of the expired time is attributable to the fact that plaintiffs' complaint was initially dismissed on defendant's summary judgment motion. This was followed by an appeal to the Ninth Circuit which ultimately resulted in an Order of Remand to this court. The fact of delay here without more is entitled to little weight.

■ Defendants also argue that they will be prejudiced by an amendment at this late stage of the proceedings. While I recognize that additional discovery would no doubt be required by allowing amendment, there appears to be substantial identity between the already existing parties to this lawsuit and those parties whom the plaintiffs seek to add. There is certainly an identity of claims being asserted against all parties and thus any prejudice can likely be minimized by coordinating efforts of counsel.

■ Defendants argue further that leave to amend should not be allowed where the claims asserted against the proposed additional parties are patently unsupportable. This circuit has held that futile amendments should not be permitted. *Klamath-Lake Pharm. v. Klamath Med. Serv. Bureau,* 701 F.2d 1276 (9th Cir.1983), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). However, defendants have not made such a showing here. Plaintiffs' claims against Kendrick and in part against Bunker Ltd. are based upon alleged breaches of their fiduciary duties. Defendants argue that neither Kendrick or Bunker Ltd. were named fiduciaries under the plan and thus plaintiffs' claims must ultimately fail. In defining the term "fiduciary" as that term is used in ERISA, Congress adopted a functional approach. A person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or control respecting manage-

ment or administration of the plan or authority or control over the management or disposition of plan assets. 29 U.S.C. § 1002 (21).

■ Plaintiff has alleged that Kendrick participated in the decision to terminate retiree health insurance benefits. Although this ultimately may be an insufficient showing to require a trial of this claim, I believe it is a sufficient showing here. Although I must agree with defendants that plaintiffs' claims against Bunker Ltd. as a fiduciary are somewhat dubious it is not the function of this court given the present posture of this case to decide the issue. In any event, such a determination is not required because plaintiffs' claims against Bunker Ltd. based upon its purchase of assets from Bunker Hill is clearly not frivolous.

■ Under the foregoing facts and circumstances, I believe it would be an abuse of discretion not to allow plaintiffs to amend their complaint. However, determining that amendment would be appropriate does not end the inquiry as to Mr. Kendrick. Defendants argue that the three-year statute of limitations governing claims against fiduciaries (29 U.S.C. § 1113) operates as a bar to plaintiffs' claims against Mr. Kendrick which in turn makes the assertion of such claims by amendment futile. Section 1113 provides in relevant part:

(a) No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility ... after the earlier of ...

(2) Three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title ...

29 U.S.C. § 1113.

Defendants' argument is premised on the fact that all plaintiffs were notified by letter dated March 15, 1982 that their insurance benefits would be terminated. This predated plaintiffs' Motion to Amend by three years and two months. However, there has been no showing that plaintiffs knew or should have known the nature and extent of Mr. Kendrick's participation in the plan's termination. More specifically, there has not been any showing that plaintiffs were aware of Mr. Kendrick's potential conflict of interest as a limited partner in Bunker Ltd. As I understand the plaintiffs' allegations, the foregoing facts form the basis of their claims against Mr. Kendrick. Accordingly, on this record it does not appear that plaintiffs' claims against Mr. Kendrick are time barred and thus amendment would not be futile.

Based on the foregoing, I believe that plaintiffs' Motion for Leave to Amend should be granted as it will facilitate the complete resolution of this case on its merits without working a substantial prejudice to the defendants.

MOTION TO CERTIFY CLASS

The prerequisites to class certification are enumerated in Fed.R.Civ.P. 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Although not specifically mentioned in Rule 23, courts have generally held that the rule implicitly requires two preliminary showings namely, that a class exist and that the named representatives are members of that class. *See* Wright & Miller, *Federal Practice and Procedure:* Civil §§ 1760 and 1761. Once these preliminary facts are established, the court must find that each of the prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b) are met before class certification is appropriate. *Blake v. Arnett,* 663 F.2d 906 (9th Cir.1981).

**592**

*Preliminary Considerations*

■ At least one purpose for requiring a preliminary showing that a class exists is to aid the court in its determination of whether a particular individual is a member of the class. Consistent with the liberal construction intended for Rule 23, courts have not required that the class be so clearly ascertainable that every potential member can be identified at this stage of the litigation. *See e.g., Carpenter v. Davis,* 424 F.2d 257 (5th Cir.1970). Plaintiffs seek to represent a class consisting of production and maintenance and salaried employees of the Bunker Hill Company who are either present or future retirees. The class is clearly identifiable and thus the first requirement has been met.

■ The next question is whether the named plaintiffs are members of the proposed class. This requirement is based upon the real party in interest rule,[1] the wording of Rule 23(a) and the constitutional requirement of standing. *Esler v. Northrop Corp.,* 86 F.R.D. 20 (W.D.Mo.1979). All named plaintiffs with the exception of Claude Becker are retired hourly employees currently receiving pensions from Bunker Hill. Plaintiff, Claude Becker, is a retired salary worker currently receiving a pension from Bunker Hill. He did not appeal from the summary judgment which was entered by this court. Defendants argue that he is barred by that judgment even though it was reversed in *Bower v. Bunker Hill,* 725 F.2d 1221 (9th Cir.1984). Assuming this were true, it does not follow that the exclusion of Mr. Becker as a named class member defeats class certification. These are separate issues. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Moreover, this action has been brought by several representative parties

and it is only necessary that one of them be a qualified member of the class as long as the prerequisites of Rule 23(a) are satisfied. *Aiken v. Obledo,* 442 F.Supp. 628 (E.D.Cal.1977). I find that the preliminary requirements have been met and I will now address the explicit prerequisites to maintaining a class action which are enumerated in Rule 23(a).

*Numerosity*

■ The numerosity requirement of Rule 23(a)(1) is satisfied when joinder of individual plaintiffs would be impracticable. *Jordan v. County of Los Angeles,* 669 F.2d 1311 (9th Cir.1982), *judgment vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). Although the sheer number of class members is not the sole determining factor, "where a class is large in numbers joinder is usually impracticable." *Id.* at 1319. At various hearings throughout the pendency of this action, counsel for both sides have represented that there are over 2000 current and future Bunker Hill retirees. In addition, the current retirees are geographically dispersed throughout at least a three-state area. I am satisfied that joinder of individual plaintiffs would be impracticable. Thus, the first requirement of Rule 23(a) has been met.

*Commonality*

As previously noted, Rule 23(a) also requires a showing of questions of law or fact which are common to the proposed class. At this point a brief review of the facts of this case is required. Production and maintenance employees of Bunker Hill have been represented by various unions since 1941.[2] In 1956, negotiations between the union and Bunker Hill resulted in a

---

1. Fed.R.Civ.P. 17(a).

2. In 1941 the bargaining agent for production and maintenance (P & M) employees was the International Union of Mine, Mill and Smelter Workers. Independent International was the exclusive P & M representative until 1960. It was succeeded by the Northwest Metal Workers, Independent. Northwest merged with United

Steelworkers of America (hereafter "Steelworkers") in 1972. Steelworkers has remained the P & M bargaining agent to date. At various times between 1950 and 1964 various craft unions succeeded in severing craft bargaining units from the P & M unit. At the present time, the crafts are represented by six different unions.

medical insurance plan for all unionized employees.[3] Prior to 1973, the terms and conditions of the medical benefits for retirees were determined by and contained in each successive collective bargaining agreement. In 1973 the form of the contract providing retirement benefits changed. The Steelworkers negotiated an agreement which no longer incorporated retirement benefits into the Collective Bargaining Agreement. Instead, retirement benefits were set forth in a separate memorandum agreement. This memorandum ran for a term of three years and granted insurance benefits that ran for an unspecified term. The 1977 and 1980 Steelworkers' contracts utilized the same format. The Craft Unions adopted this format in their 1980 agreements. The terms of the craft agreements were substantially the same as the Steelworkers' Agreement with respect to medical insurance for retirees. All union agreements provided for a uniform plan of medical insurance for an unspecified duration.

In 1981 Bunker Hill published a summary of its medical plan which stated the eligibility requirements for receiving plan benefits. According to the summary, the only requirement for eligibility for receiving insurance is that the applicant be "receiving a pension from the Bunker Hill Company." The summary also indicated that upon a pensioner's death their "children and surviving spouse may continue to be covered." The plan summary was distributed to all Bunker Hill salaried employees. Further explanation of the plan was contained in a letter mailed to all employees which described insurance coverage in terms of a "lifetime" maximum. One employee has stated that he was told by management that insurance benefits would "continue for the rest of [his] life." The local union president was allegedly told that surviving spouses would receive insurance as long as they continued to pay their contributions to the plan.

In the Spring of 1982, Bunker Hill prepared to suspend its operations at its mine in Kellogg, Idaho. Shortly thereafter, it notified its retirees of its intent to cancel their insurance benefits.

Under the foregoing facts the plaintiffs claim that one common question of law and fact emerges—whether the parties intended to create lifelong vested medical insurance benefits for Bunker Hill retirees.

The defendants first argue that the agreements on which the union plaintiffs base their claims are dissimilar and therefore a finding of commonality is precluded. In particular, the defendants point to the fact that production and maintenance employee's retirement benefits were addressed by seven different memorandum agreements. This argument is unpersuasive. As already noted, each memorandum agreement contained identical language regarding insurance benefits. These agreements are decidedly ambiguous on the question of the duration of benefits and all union employees are relying on substantially the same extrinsic evidence to establish their claims.

Defendants' second argument is that the commonality requirement has not been met because individual union retirees or their representatives may have attributed different meanings to the documents issued by company representatives. This argument overlooks basic rules of construction applicable to interpreting collective bargaining agreements. Interpretation of collective bargaining agreements under § 301 is governed by substantive federal law. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies. *Id.* at 457, 77 S.Ct. at 918. Neither a union representative, or a particular retiree's interpretation of an agreement is determinative unless supported by the contract viewed in light of its

---

**3.** Non-union employees have always received benefits identical to those provided union members.

language, its context, and any other indicia of the parties intention. *Laborers Health & Welf. Tr. Fund v. Kaufman & Broad,* 707 F.2d 412 (9th Cir.1983). While it is true, as defendants point out, that verbal representations were allegedly made to some employees and union representatives and not to others, I do not feel that this precludes a finding of commonality. Rule 23(a)(2) does not require that every question of fact be common to every member of the class. *Jordon* at 1320.

■ Defendants further argue that different legal theories support salaried pensioner's claims and therefore a finding of commonality is precluded. This contention turns on the fact that union retiree's benefits were the subject of collective bargaining while salaried workers base their claims on a unilateral contract theory. This argument mischaracterizes the issue. It is undisputed that medical benefits were voluntarily extended to salaried pensioners. What is disputed is whether the benefits constituted a vested right which could not be terminated by Bunker Hill. In this regard, salaried workers are in the same position as union workers.

■ Defendants also argue that plaintiffs have not met their burden of showing commonality because certain jurisdictional defenses may be available against some retirees which may not apply to others.[4] Such an argument mistakenly focuses the inquiry at hand. Rule 23(a) does not indicate that possible defenses to an action are to be considered when determining the appropriateness of class certification. Rather, whether the elements of Rule 23(a) are satisfied is to be judged by a consideration of the allegations in the complaint and the nature and range of proof necessary to establish those allegations. *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The fact that defendants may have jurisdictional defenses in no way negates the finding, that the allegations raise questions of law or fact common to the class as a whole. I would also note that the availability of these defenses would be for the court's determination and any decision in favor of the defendants would present little difficulty in application.

■ Finally, defendants argue that the commonality requirement is not met where, as here, the amount of damages which might be obtained is different as to each individual and subject to individual proof. This contention is contrary to the law of this circuit and cannot serve as a basis for denying class certification. In *Blackie, supra,* the Ninth Circuit, addressing this issue held that "the amount of damages is invariably an individual question and does not defeat class action treatment." *Id.* at 905.

I find that the plaintiffs have established the existence of common issues of law and fact. Therefore, I will turn to the third requirement necessary to maintain a class action under Rule 23(a) namely, that the claims of the named representatives be typical of the claims of the class.

*Typicality*

■ The typicality and commonality requirements of Rule 23(a) tend to merge. Both are designed to assure that the named plaintiffs' claims are aligned with those of the class. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). This requirement was addressed at length by the Ninth Circuit in *Jordan.* There the court held that a named plaintiff's claim will be typical of the class where there is a "nexus between the injury suffered by the plaintiff and the injury suffered by the class." 669 F.2d at 1321. Such a nexus will be found where the named plaintiff's claim "stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based on the same legal or remedial theory." *Id.*

---

4. Defendants assert that the Norris-LaGardia Act (29 U.S.C. § 101 *et seq.*) may apply to preclude the issuance of a permanent injunction in favor of the present or future union retirees. In addition, defendants argue that certain retirees may be required to proceed to arbitration of their claims before resorting to litigation.

Defendants arguments regarding typicality essentially echo their position with respect to the commonality issue and will not be addressed again here. My examination of the plaintiffs' claims convinces me that the named plaintiffs' claims are typical of the claims of the class. Both the named plaintiffs and the putative class members allege injury or potential injury from Bunker Hill's across-the-board termination of medical benefits for retirees. These claims, although derived from different contracts assert an entitlement to identical benefits which were administered pursuant to a uniform plan. The damages and equitable relief sought will inure to all class members.

*Adequate Representation*

The adequacy of representation prerequisite to class certification is satisfied where the court finds that the named class members are represented by qualified counsel, and the named representatives' interests are not antagonistic to the interests of the class. *Social Services Union, Local 535 v. County of Santa Clara,* 609 F.2d 944 (9th Cir.1979). There is no question that the named class members are represented by qualified counsel. This case has been diligently prosecuted through all proceedings to date including an appeal to the Ninth Circuit.

I am also convinced that there are no antagonistic interests between the proposed plaintiff class and its named representatives. Here, defendants renew their argument that Claude Becker did not appeal the summary judgment and therefore cannot remain as a named plaintiff. The defendants conclude that if Claude Becker is excluded as a named plaintiff, there is no named plaintiff remaining to represent the salaried workers and thus class certification is improper. I disagree. There is no separate subclass of salaried employees. To adopt the defendants' argument would be contradictory of my prior findings that a class consisting of all Bunker Hill's retirees is appropriate. The remaining representatives share common objectives and legal and factual positions with the class and therefore class representation is adequate.

Having found that all of the criteria of Rule 23(a) have been met, I must now determine whether the plaintiff has satisfied at least one section of Rule 23(b). Plaintiffs contend that certification is appropriate under all sections of the rule. I will examine each section in turn.

*Certification Under Rule 23(b)(1)*

Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of adjudication in which the defendant will be required to follow inconsistent courses of continuing conduct. This danger exists in those situations in which the defendant by reason of the legal relationships involved cannot as a practical matter pursue two different courses of conduct. *LaMar v. H & B Novelty & Loan Company,* 489 F.2d 461 (9th Cir.1973). In this case, plaintiffs seek a declaration of their right to lifetime medical benefits. Present pensioners who have already expended sums on medical care seek a return of those amounts. A judgment in favor of individual plaintiffs would only be inconsistent with a judgment against other defendants in that the defendants would be required to maintain insurance benefits for some plaintiffs and not for others. Thus, I do not feel that certification under subdivision (b)(1)(A) is appropriate.

Subdivision (b)(1)(B) permits class actions where individual actions might "as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). The Ninth Circuit has strictly construed this subdivision and limited its application only to those situations where separate actions "inescapably will alter the substance of the rights of others having similar claims." *LaMar,* 489 F.2d at 466–67. There has been no such showing here. Plaintiffs argue that certification is appropriate under (b)(1)(B) because punitive damages are sought from a limited fund which as a practical matter would allow recovery by

less than all claimants. Plaintiffs have offered no evidence of the likely insolvency of the defendants and "without more, numerous plaintiffs and a large ad damnum clause should [not] guarantee (b)(1)(B) certification." *In re Northern Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d 847 (9th Cir.1982) *cert. denied* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) *vacating In Re Dalkon Shield Litigation,* 526 F.Supp. 887 (N.D.Cal.1981).

### Certification Under Rule 23(b)(2)

■ Subdivision (b)(2) authorizes class actions where:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...

Fed.R.Civ.P. 23(b)(2). In their prayer for relief, plaintiffs have requested a judgment declaring that the medical benefits established as part of the Bunker Hill retirement plan were vested benefits which were improperly terminated. Defendants renew their argument that plaintiffs' claims rest on different agreements and that any relief granted will vary depending on a plaintiff's status as either a present or future pensioner. Defendants do not show, nor can I perceive how these two facts affect the issue here. Plaintiffs challenge an action which was directed towards the class as a whole, and final classwide declaratory and injunctive relief would be appropriate. This is all that is required under subsection (b)(2) of Rule 23. *Morgan v. Laborer's Pension Trust Fund, Etc.,* 81 F.R.D. 669 (N.D.Cal.1979). Accordingly, plaintiffs' Motion to Certify this matter as a class action under Rule 23(b)(2) is GRANTED.

### Class Structure

■ Certification of this litigation as a class action does raise certain administrative problems. In connection with plaintiffs' prayer for declaratory relief, they also seek compensatory and exemplary damages. I have previously expressed my concerns to counsel regarding the manage-

ability of this action which may require a determination of over 2000 damage claims. However, as previously noted, class action treatment cannot be dependent upon the individualized nature of damages. Instead, Rule 23(c) and (d) grants broad discretionary powers to enable the court to solve novel administrative problems which are posed by the class action device.

Plaintiffs suggest that problems presented by individual damage claims can be eliminated by adopting an aggregate damages approach. Under this theory, if plaintiffs prevailed on the liability issues, they would be awarded an amount equal to the cost to Bunker Hill in maintaining the plan over its actuarially determined life span. While this simplistic approach his certain appeal, I decline to adopt it here.

The cases relied upon by the plaintiffs in support of this approach generally address factual settings in which it is either impracticable or impossible for the plaintiffs to prove their damages by any other method. *In re Antibiotic Antitrust Actions,* 333 F.Supp. 278 (S.D.N.Y.1971) (class of plaintiffs enormous with corresponding amount of individual claims minimal.); *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322 (E.D.Pa.1976) (recognizing that statistical evidence will suffice to establish the amount of damages suffered when individualized proof unavailable). The rationale of the foregoing decisions appears to be grounded in the strong public policy of not allowing defendants' wrongful acts to go unpunished.

In contrast, plaintiffs' damages here are susceptible to individualized proof and the manner of presenting such proof can no doubt be streamlined if and when the issues arise. At this point however, development of a precise method for presenting such evidence seems premature. I feel that the most efficient manner to try this case is through bifurcation. As will be discussed in greater detail *infra,* plaintiffs will be entitled to a jury determination on the issue of whether defendant Bunker Hill breached the collective bargaining agree-

ments and the consequent intra-corporate liability of Gulf and Bunker Ltd. If the jury verdict is rendered on behalf of plaintiffs, trial can proceed to the second phase in which damages will be determined. Fiduciary liability issues will also follow in the second phase which will be determined by the court as will all issues regarding injunctive relief.[5]

## JURY TRIAL

Plaintiffs' complaint asserted a timely demand for a jury trial. Defendants bring this motion to strike that demand pursuant to Rule 39(a)(2) Fed.R.Civ.P. They argue that the plaintiffs are not entitled to a jury trial because the character of the claims asserted are essentially equitable. In support of this position, they rely on a line of cases commencing with *Wardle v. Central States*, 627 F.2d 820 (7th Cir.1980), *cert. denied* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). In *Wardle* the court held that the issue of the plaintiffs' entitlement to pension benefits under ERISA was not triable to a jury because such suits prior to ERISA had been considered equitable in nature. This interpretation was based primarily on the law of trusts which the court noted provides a beneficiary with a legal remedy "only with respect to money the trustee is under a duty to pay unconditionally and immediately to the beneficiary". *Id.* at 829 (citing Restatement (Second) of Trusts §§ 197–198 (1959)).

The court's interpretation derived further reinforcement from the fact that federal courts have interpreted the scope of review in actions under ERISA § 502(a)(1)(B) to be identical to the limited review employed in earlier actions for pension benefits, namely, the arbitrary and capricious standard. The court held that this limited scope of review "bespeaks a legislative scheme granting initial discretionary decision-making to bodies other than the federal courts, with which federal jury trials have proved incompatible." *Id.* at 830 (citation omitted). This same analysis has been applied to actions brought against trustees for pension benefits under § 301 of the LMRA. *See, Nedd v. United Mine Workers*, 556 F.2d 190 (3rd Cir.1977), *cert. denied* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978).

▮ I agree with defendants' contention that *Wardle* controls the plaintiffs' breach of fiduciary duty claims. However, defendants would extend *Wardle* to plaintiffs' other claims as well. The defendants' implicit argument is that all actions to establish rights to plan benefits under ERISA or the LMRA are inherently equitable. I do not read the foregoing authorities for such a broad proposition. Rather, these cases merely reflect a resolution of the jury trial question on a case-by-case basis following the three-pronged test propounded in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) where the Supreme Court held:

> [T]he 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries.

*Id.* at 538, 90 S.Ct. at 738.

Plaintiffs have brought this action against Bunker Hill as the plan administrator to determine whether the contracts at issue established vested rights to medical benefits which could not be unilaterally terminated by the company. In their first claim for relief present pensioners pray for damages including recovery of amounts spent to obtain medical coverage since the termination of the company plan. Both present and future pensioners seek punitive damages.

Plaintiffs style their claim for damages as a breach of contract action arising under § 301 of the LMRA or presumably under § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) of ERISA. They assert that breach of contract claims are traditionally legal and thus the Seventh Amendment guarantees them the right to a jury trial of this issue. I

---

**5.** As with any certification order, this order will remain subject to modification should subsequent developments in the litigation so dictate. Fed.R.Civ.P. 23(c)(1).

agree. Section 301 of the LMRA provides that an employee may bring an action for damages against an employer for breach of a collective bargaining agreement. *Rehmar v. Smith*, 555 F.2d 1362 (9th Cir.1976). Similarly, § 502(a)(1)(B) of ERISA provides that a beneficiary may bring an action for redress of violations of the terms of the plan. A suit for breach of contract seeking damages was traditionally an action at law and thus triable to a jury under the Seventh Amendment. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Thus, the plaintiffs have a right to a jury determination of not only whether the contract has been breached and the extent of damages if any, but also just what the contract is. *Id.* at 479, 82 S.Ct. at 900.

A different conclusion is not mandated by *Wardle* and its progeny. As previously noted, *Wardle* involved an action brought by a beneficiary against the plan trustee to enforce payment of pension benefits. As such, the action was determined to be essentially a suit for accounting of his stewardship which was traditionally equitable in nature. There is no basis for equating the present action with those cases involving the discretionary refusal to pay benefits by a trustee interpreting an existing plan.[6] A decision to terminate an entire plan is not a discretionary act that is contractually delegated to a plan trustee.

This distinction is further supported by the different approaches courts have taken to such actions. When a trustee performs a discretionary function it is only reversible by a court if it is found to be arbitrary or capricious. (*See e.g. Rehmar, supra,* (holding that the arbitrary and capricious standard applies to actions brought by beneficiaries against a trustee under § 301 of the LMRA); *Malhiot v. Southern California Retail Clerks Union*, 735 F.2d 1133 (9th Cir.1984) *cert. denied*, 469 U.S. 1189, 105

S.Ct. 959, 83 L.Ed.2d 965 (1985) (decision by employee benefit plan trustees not reversed by courts in actions brought under ERISA unless arbitrary or capricious).) In contrast, when courts have been called upon to determine whether an ambiguous contract provides for vested lifetime benefits they have not paid any particular deference to the interpretation given the agreement by the plan administrator. Rather, they have applied traditional contract principles and resorted to extrinsic evidence to determine the parties intent at the time of contracting. *Bower v. Bunker Hill*, 725 F.2d 1221 (9th Cir.1984); *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) *cert. denied* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

Based upon the foregoing, I feel that the breach of contract claims of the plaintiffs present legal issues which they are entitled to have tried to a jury. However, the jury's role will be limited to determining any factual questions which arise in connection with the interpretation of the contracts upon which the plaintiffs rely and if required in the second phase of trial a determination of the amount of damages, if any, flowing from the established breach. In addition, plaintiffs' claims against Gulf Resources based upon agency principles and against Bunker Ltd. based upon its asset purchase agreement with Bunker Hill present factual questions to which defendants do not currently contest plaintiffs' right to a jury determination. Plaintiffs' additional claim for injunctive relief however, presents an issue for the court's determination.

IT IS THEREFORE ORDERED:

(1) That this action is certified as a class action pursuant to Rule 23(b)(2) with respect to all relief sought.

(2) That the class shall consist of all persons who have retired or will retire from

---

**6.** Even if this case could be analogized to *Wardle*, it would not alter the conclusion that I reach today at least as to present pensioners. Plaintiff—present pensioners allege that they have met all of the requirements of eligibility to medical benefits required under the plan. As far as their claim for damages is concerned, it more closely resembles an action to force payment of money immediately and unconditionally due. Such actions have traditionally been construed as being legal. Restatement (Second) of Trusts § 198 (1959).

the Bunker Hill Company and who are or will be eligible to receive a pension, and who under the plan at issue may have a right to receive medical benefits.

(3) Plaintiffs' claim based upon Bunker Hill's alleged wrongful termination of the plan will be tried to the jury.

(4) Plaintiffs' claim against Gulf Resources based upon its alleged agency relationship with Bunker Hill and against Bunker Ltd. based upon its purchase of assets agreement with Bunker Hill will be tried to the jury.

(5) Plaintiffs' claims for breach of fiduciary duties against all defendants and for injunctive relief will be tried to the court.

(6) This action will be bifurcated as follows: Plaintiffs' claims for wrongful termination of benefits along with claims for intra-corporate liability (outlined above in (4)) will first be submitted to the jury. Trial of all other issues will abide the outcome of this liability phase.