582 A.2d 557

**H. Scott KAHLE, et ux.**

v.

**JOHN McDONOUGH BUILDERS, INC.**

**No. 148, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 30, 1990.

Certiorari Granted Feb. 7, 1991.

John H. Morris, Jr. (George F. Pappas and Venable, Baetjer and Howard, on brief), Baltimore, for appellants.

Deborah K. Sobieski (Howard G. Goldberg and Smith, Somerville & Case, on brief), Baltimore, for appellee.

Argued before GARRITY, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

On October 9, 1987, John McDonough Builders, Inc. ("McDonough Builders") brought a mechanic's lien action against Scott and Sherrie Kahle ("the Kahles") in the Cir-

cuit Court for Howard County alleging that the Kahles owed McDonough Builders $159,659.00 plus interest. The Kahles filed an answer, as well as a counterclaim and prayer for jury trial, which alleged that McDonough Builders had breached a cost plus construction contract for the construction of a new home for the Kahles. The counterclaim asked for $250,000 in damages.

After finding that there was probable cause for a lien, the circuit court placed an interlocutory lien on the Kahles' property on December 9, 1987.

The actions were heard in a joint jury and bench trial that was held on May 22, 1989. The counterclaim was decided by the jury, which awarded the Kahles $12,000. The mechanic's lien action was decided by the Honorable J. Thomas Nissel, who after determining that the sum was "a balance due the builder of $145,151.25," awarded McDonough $133,-151.25 plus pre- and post-judgment interest on the mechanic's lien claim. Judge Nissel's award included a deduction for the $12,000.

On July 17, 1989, Judge Nissel signed a Final Order Establishing Mechanic's Lien and Directing Sale of Property. The Kahles then filed a Motion to Alter or Amend Judgment, which the circuit court denied on September 14, 1989.

On appeal, the Kahles ask us to consider whether:

I. The circuit court erred by (a) failing to hold that McDonough Builders had breached its fiduciary responsibility to the Kahles under the cost-plus-fixed-fee construction agreement by failing to give them adequate information as to the total cost of construction during the course of the project, and (b) by permitting McDonough Builders to recover in the mechanic's lien action for the cost of material and labor for work performed beyond any projection of cost of which McDonough Builders had reasonably informed the Kahles.

II. The circuit court erred by instructing the jury so as to limit any recovery that the Kahles might have for breach of contract to defective workmanship.

## THE FACTS

After purchasing a lot upon which they wanted to have a house built, Scott and Sherrie Kahle hired an architect, Neil Lang, who prepared specifications for the house and preliminary drawings. The Kahles were going to send out these drawings and specifications for bidding by various contractors. In the spring of 1986, they asked John McDonough ("McDonough"), of McDonough Builders, to prepare a construction budget to assist them in evaluating construction bids. McDonough agreed to "figure up a rough estimate."

McDonough's preliminary budget estimated the cost at $569,000. When he presented the preliminary estimate to the Kahles, he emphasized that it was inexact because the site plan, drawings, specifications, and selections had not been finalized. McDonough then explained the types of contracts he used for his clients. He said that he could not use a fixed price contract, which would require him to build the house for the price set in the contract, unless the plans were further along than the preliminary drawings provided by the Kahles because he could not determine what the price would be. The alternative was a cost-plus-fixed-fee contract, which gave the client the opportunity to make changes and be closely involved in the construction process.

Scott Kahle expressed an interest in getting the house started before the winter began, rather than waiting for final drawings and specifications. A few days later, he had his architect, Neil Lang, contact McDonough about going ahead with the cost-plus-fixed-fee contract, because the Kahles had decided not to solicit bids from other contractors.

The Kahles asked McDonough to reduce the original estimate figure of $569,000; after some effort, he was able to reduce it to $509,000. This figure included a fixed-fee of $78,000 and $431,000 as a budget for hard costs based on

the preliminary plans and specifications. Any costs over the baseline cost figure would be paid to the builder, as well as 15% for profit and overhead.

The Kahles and McDonough signed a cost-plus-fixed-fee contract on June 4, 1986. In early July of 1986, McDonough sent the Kahles a sheet that laid out the items they were to select and the time frame for making these selections. The Kahles made their initial selections regarding the construction. McDonough began receiving more detailed drawings from the Kahles' architect, which enabled him to solicit prices from subcontractors for the various steps of construction. Construction then began.

On March 31, 1987, McDonough tallied the known construction costs; they had totalled $744,000. Construction continued until the end of June. In early July, the Kahles gave a party to thank McDonough, his employees, and his subcontractors for their fine work in constructing the house. In the middle of July, McDonough secured a use and occupancy permit for the Kahles. They moved into the house at the end of July over McDonough's protests; he objected because he still had not been paid all of the money owed him. The appellants refused to pay any further sums because they said the total cost of construction, which McDonough claimed was $881,000, was much too high.

McDonough then filed a mechanic's lien action on October 9, 1987, seeking $159,658.98, the balance he claimed was due him. The Kahles responded with a counterclaim for breach of the construction contract. The Circuit Court for Howard County, the Hon. J. Thomas Nissel presiding, found in favor of McDonough on the mechanic's lien; thus, we are presented with this appeal.

Having summarized the facts, we note that other facts will be included in the discussion as they become relevant.

## DISCUSSION

### I.

Under the provisions of the contract between the Kahles and McDonough, McDonough accepted a "relationship of

trust and confidence established between him and the [Kahles]''. The appellants contend that McDonough breached the trust that appellants placed in him by exceeding the initially projected costs and by not informing them of the escalating costs. They argue that the circuit court erred (1) by not holding that the appellee breached its fiduciary duty to the appellants, and (2) by permitting appellee to recover in a mechanic's lien action for the cost of material and labor beyond the projected cost.

■ Appellants rely on our decision in *Jones v. J.H. Hiser Constr. Co.,* 60 Md.App. 671, 484 A.2d 302 (1984). *Jones* involved a cost-plus-fixed-fee construction contract in which the builder claimed a mechanic's lien against the purchasers. *Id.* at 673, 484 A.2d 302. They defended by arguing that the builder had not kept them apprised of the ongoing and escalating construction costs. *Id.* at 675, 484 A.2d 302. We agreed with the purchasers, and found that the builder breached his contractual fiduciary duty to keep effective track of the ongoing or escalating costs of construction and to advise his client of these costs. *Id.* at 678, 484 A.2d 302. We then held that the breach of duty barred a mechanic's lien for any sum beyond the agreed-upon cost. *Id.* at 679, 484 A.2d 302.

Appellees point out several valid differences between *Jones* and the instant case. McDonough had mere concept drawings at the time of the original estimate; there is no indication that the builder had incomplete drawings in *Jones.* The record in the instant case demonstrates constant contact between the Kahles and McDonough, whereas in *Jones,* the communication between the builder and the purchasers appeared limited to periodic invoices. Finally, there was no testimony here that attacked the reasonableness of McDonough's charges for the changes, selections, and extras; in *Jones,* the trial testimony indicated that the reasonable cost of the changes was substantially below that charged.

Although it is true that we do not have the record from *Jones* before us, judging from the relevant facts cited in that case, the amount of interaction between the Joneses and Hiser was limited. Here, McDonough and Kahle met and discussed every stage of the project.[1] When McDonough received prices from subcontractors, he would confer with Scott Kahle, so Mr. Kahle could decide which subcontractor to choose. All of the various changes, selections, and extras requested by the Kahles were discussed by the parties on a routine basis. Although the contract had required that all changes be made by written agreement, Scott Kahle advised McDonough that this would not be necessary.

As construction progressed, McDonough received numerous sets of drawings from the Kahles. He periodically presented them with revised budget sheets which reflected that their requested changes were being made. Appellee admits that he never furnished the appellants with the final estimate that was required under the contract. The trial court apparently was persuaded by his explanation that this was because he did not receive the final plans and specifications necessary for preparing the estimate. The Kahles could not give him these plans because they were constantly making changes.

 The trial court could and apparently did find that, unlike the Joneses, the Kahles were not oblivious to the costs that arose after McDonough projected the cost at $744,000 on March 31, 1987. They were presented with various invoices and estimates, McDonough's books were available to them, they asked him for invoices, they had his books checked by their accountant. They also were person-

---

1. Some of the facts herein were in dispute. But, in any event, we "assume[ ] the truth of all the evidence, and of all the favorable inferences fairly deducible therefrom tending to support the factual conclusion of the trial court." *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 354, 517 A.2d 1122 (1986).

ally involved in the selections, extras, and changes that arose after March.

Because the instant case is factually distinguishable from *Jones, Jones* is not controlling, although its principles certainly apply. The evidence was sufficient for the trial court to find that there was no breach of fiduciary duty by the appellee. McDonough adequately met his obligation to keep them informed of the costs. The appellants chose the cost-plus-fixed-fee contract for its inherent flexibility. It is designed for clients who plan to make numerous changes, and be involved on a daily basis throughout construction with input, comments, and changes. The Kahles took advantage of this flexibility, and made constant changes and selections. Furthermore, their architect, interior designer, and accountants were involved in the construction process. Their constant, close involvement belies any claim that they had no clue as to the accumulating costs, as was the case in *Jones.* The Kahles did not blindly rely on McDonough; he did not breach their trust and confidence.

In light of the foregoing discussion, we reject the appellants' argument that under *Jones,* the Kahles' liability for the mechanic's lien may not exceed the projected cost of $744,000. Because it found that the overrun was not caused by a fiduciary breach, the circuit court was justified in awarding the builder the full amount of the lien, less the requested $9,940 in delay costs that the court rejected.

Our review of the record convinces us that there was enough evidence upon which the trial court could rely in determining that McDonough did not breach his fiduciary duty. In actions tried without a jury, an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md.R. 8–131(c). The trial court was competent to assess the voluminous testimony and evidence presented by both sides in the instant case. Having found

no clear error that would necessitate reversing the circuit court's decision, we shall affirm.

## II.

We next must consider whether the circuit court erred in limiting the jury's role to determining whether the Kahles should recover for breach of contract due to defective workmanship. The Kahles insist that the jury should have received the requested jury instructions pertaining to the alleged breach of fiduciary duty. McDonough contends that the fiduciary duty . issue was interwoven with the mechanic's lien claim; thus, the alleged breach was for the trial judge to determine.[2]

As our discussion will indicate, we believe it was proper for the trial judge to decide the breach of duty issue himself, rather than to apportion it to the jury, because it was related to the mechanic's lien and not the breach of contract claim.

This issue raises the problem of defining the scope of trial by jury now that law and equity are merged in Maryland. Traditionally, "[c]ivil actions were required to be filed as either law or equity actions. With few exceptions jury trials were unavailable in cases filed on the equity side of the court, and equity relief was unavailable in law actions." *Higgins v. Barnes,* 310 Md. 532, 540, 530 A.2d 724 (1987).

In 1984, the distinction between law and equity was abolished in Maryland. Maryland Rule 2–301 provides: "There shall be one form of action known as 'civil action.' " The Rules Committee notes in its Committee Note to the rule that the rule's effect is "to eliminate distinctions between law and equity for purposes of pleadings, parties, court sittings, and dockets. It does not affect the right to

---

**2.** Appellee also argues that the Kahles' attorney waived this argument by making certain statements to the trial judge. We quickly dispose of this contention, as we find it unpersuasive. We agree with the appellants that this issue was not waived, as appellants did tender jury instructions regarding fiduciary duty, and did object after the judge refused the instructions.

jury trial." [3] Thus, Rule 2–301 does not settle the availability of trial by jury when an action has both equitable and legal elements, as in the instant case.

■ Under the Maryland Rules, "[a]n action to establish a mechanics' lien is equitable in nature. . . ." Md.R. BG71. A breach of contract claim, on the other hand, it is an action at law, *see* 1A C.J.S. *Actions* § 127 (1985) (citations omitted) ("[V]arious particular actions or proceedings have been determined to be legal in nature, such as . . . an action to recover for breach of a contract."); thus, the plaintiff has the right to have a jury determine whether the contract was breached and the extent of the damages. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 479, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962).

■ The appellants insist that the trial judge erroneously decided the fiduciary duty issue; instead, he should have given it to the jury in light of the Kahles' counterclaim and prayer for jury trial. We are unpersuaded. The breach of fiduciary duty claim is inseparably entwined with the mechanic's lien claim. The consequence of the alleged breach was an overrun in the projected cost. The possibility that the amount of the lien was increased due to a breach of fiduciary duty was a factor incumbent upon the judge to consider in determining the validity and the amount of the mechanic's lien.

This claim for fiduciary breach is defensive in nature, and would not have been the subject of an affirmative claim. The Kahles did not sue independently for damages for breach of fiduciary duty, nor would they have; rather, they sued for the reduction of what they owed.

In *East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982), the Court of Appeals indicated that a " 'counterclaim must in fact be a counterclaim and not merely a defense to plain-

---

**3.** The right to demand a jury is codified in Rule 2–325(a), which provides: "Any party may elect a trial by jury of any issue triable of right by a jury. . . ." Md.R. 2–325(a).

tiff's action.'" *Id.* at 461, 445 A.2d 343 (*quoting Western Geophysical Co. of Am., Inc. v. Bolt Assoc., Inc.*, 463 F.2d 101, 103 n. 2 (2d Cir.1972)). That admonition perfectly fits the instant situation. The breach of fiduciary duty claim was not a separate, legal counterclaim; instead, it was a defense to McDonough's equitable claim. It therefore was properly decided by the judge as part of the mechanic's lien claim, and not as part of the breach of contract claim decided by the jury.

Appellants insist that McDonough incorrectly cites *Hashem v. Taheri*, 82 Md.App. 269, 571 A.2d 837 (1990), for the proposition that the fiduciary duty claim was properly decided by the trial judge and not the jury. Appellants, however, have misapplied *Hashem*. *Hashem* does, as appellants contend, mandate that the jury must determine common factual issues. *Id.* at 273–74, 571 A.2d 837. Whether McDonough overran the projected cost was not, however, an issue common to both the mechanic's lien and the breach of contract claim. Instead, as we have determined, it was related solely to the mechanic's lien.

Appellants' citation of *Kostohryz v. McGuire*, 298 Minn. 513, 212 N.W.2d 850 (1973), is totally inapposite. *Kostohryz* was an action to recover damages for malpractice. *Id.* at 852. It was tried as a tort as well as an action to recover damages for breach of contract. *Id.* Being a wholly legal action, all of its issues properly went to the jury, including a claim for negligent breach of a contract provision requiring the architect to submit an estimate of the probable costs of constructions. *Kostohryz* has no relevance here. There was no equitable-legal dichotomy as in the instant case. Here, the alleged fiduciary breach clearly belongs on the equitable side, whereas in *Kostohryz*, there was no equitable side to consider. Thus, the breach of fiduciary duty issue there properly went to the jury.

The prevailing case law in other jurisdictions and commentary indicates that an action for breach of trust or fiduciary duty is equitable in nature; thus, such an action does not entitle the plaintiff to a jury trial. The remedies of

a beneficiary against a trustee are exclusively equitable except "if the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment." *See* Restatement (Second) of Trusts §§ 197 and 198 (1959). And, "[i]f the trustee of a chattel is under a duty to transfer it immediately and unconditionally to the beneficiary and in breach of trust fails to transfer it, the beneficiary can maintain an action at law against him." *Id.* § 198.

These two exceptions have been applied in numerous cases. *See, e.g., Dixon v. Northwestern Nat'l Bank of Minneapolis,* 297 F.Supp. 485, 488 (D.Minn.1969); *Jefferson Nat'l Bank v. Central Nat'l Bank in Chicago,* 700 F.2d 1143, 1149 (N.D.Ill.1983); *Sichko v. Lewis,* 191 F.Supp. 68, 69 (W.D.Pa.1960). Yet another exception is made when the trustee has made improper investments. In such a case, the action is one at law, triable by jury. *See Dettenborn v. Hartford–Nat'l Bank & Trust Co.,* 121 Conn. 388, 185 A. 82, 84 (1936). The facts in this case clearly do not fall under any of these narrow exceptions; accordingly, we remain convinced that this breach of trust action belongs in equity.

It has been held that the equitable nature of a breach of fiduciary duty claim prevents it from being sent to the jury. *See, e.g., Nobile v. Pension Committee of Pension Plan,* 611 F.Supp. 725, 729 (D.C.N.Y.1985) ("[T]he traditionally equitable question of whether or not the alleged 'common law trustee' breached its fiduciary duty ... [is] not such as would entitle [plaintiffs] to bring an action at law which would be triable before a jury.")

Particularly relevant here is *Bower v. Bunker Hill Co.,* 114 F.R.D. 587 (E.D.Wash.1986), in which the court held that although a breach of contract claim belonged to the jury, a breach of fiduciary duty element of the contract claim was properly determinable by the court. *Id.* at 597–98.

Heretofore in Maryland, we have not specifically addressed whether there is a right to a trial by jury for a breach of fiduciary duty counterclaim to an equitable proceeding, although we have examined the right to a jury trial in the context of other equitable actions.

In *Higgins*, 310 Md. at 535, 530 A.2d 724, the plaintiff brought suit for specific performance of a contract to exchange property; the defendant counterclaimed for breach of contract. The court held that the plaintiff had a right to have the breach of contract claim submitted to the jury, because the claim "clearly [involved] the type of legal issues historically subject to trial by jury." *Id.* at 552, 530 A.2d 724. The breach of contract claim in *Higgins*, however, did not involve an equitable component such as the alleged fiduciary breach in the case before us. The breach of contract claim in *Higgins* was purely legal; thus, it was appropriately determined by a jury.

Traditionally under Maryland law, breach of fiduciary duty is an equitable principle. *See Central Savings Bank of Baltimore v. Post*, 192 Md. 371, 381, 64 A.2d 275 (1949). Appellants have charged that appellee breached the trust and confidence they had placed in it. "[A]s a general rule, relief will be afforded in equity in all transactions in which 'influence has been acquired and abused, in which confidence has been reposed and betrayed.'" *Farmer v. O'Carroll*, 162 Md. 431, 445, 160 A. 12 (1932) (citations omitted).

In *Impala Platinum v. Impala Sales*, 283 Md. 296, 389 A.2d 887 (1978), the court addressed whether an equitable counterclaim to a legal action could be submitted to a jury. In *Impala Platinum*, the appellant had filed an assumpsit action, which, pursuant to Maryland Rule 340b, was properly on the law side of the court. *Id.* at 310, 389 A.2d 887. The counterclaim to appellant's suit, which prayed for both equitable and legal relief, claimed breach of contract and fiduciary relationship by the appellant. *Id.* at 311, 389 A.2d 887. Appellant argued that the proponent of the counterclaim, a garnishee to the appellee, had improperly been granted a jury trial. *Id.* at 320, 389 A.2d 887. The Court

held that the jury trial *was* proper, because the garnishee had abandoned all prayers for equitable relief prior to trial. *Id.* at 320, 389 A.2d 887. Thus, "any relief or remedy to which [the parties] may have been entitled was properly on the law side of the court with the right to trial by jury." *Id.* at 321, 389 A.2d 887.

It is evident that the trial judge properly reserved for himself the disposition of the breach of fiduciary relationship claim, first, because it was inexorably intertwined with the mechanic's lien and, second, because of its innate equitable nature. Although we have merged law and equity in Maryland, we have not eradicated the historical judicial function of determining equitable issues.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.