Phillip GROOVER, et al., Plaintiffs,

v.

MICHELIN NORTH AMERICA,
INC., Defendant.

Civ.A. No. 97–A–1780–E.

United States District Court,
M.D. Alabama,
Opelika Division.

June 24, 1999.

Clarence M. Small, Jr., Rives & Peterson, James W. Davis, Galloway & Moss, L.L.C., L. Vastine Stabler, Jr., Birmingham, AL, Thomas L. Rountree, Deputy District Atty., Opelika, AL, for Phillip Groover, Leon Stancil, John Smith, Roy E. Plott, Norman V. Schockly, Marline H. Sykes, Debbie Garrett,

Wyatt L. Potts, Harry Vogler and Donald G. Black.

Stephen E. Brown, Jeffrey A. Lee, Maynard, Cooper & Gale, P.C., Birmingham, AL, John J. McGowan, Jr., Baker & Hostetler, Cleveland, OH, for Michelin North America, Inc.

Joe R. Whatley, Jr., Whatley Drake, L.L.C., Birmingham, AL, for United Steelworkers of America, International Union and Local Union No. 351.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

Before the court is a Motion for Class Certification filed by the Plaintiffs on November 20, 1998. The Plaintiffs originally filed their Complaint in this case on December 30, 1997. They allege that Defendant Michelin North America, Inc. ("Michelin") made unilateral adverse changes in the health insurance benefits afforded hourly retirees. Plaintiffs bring this action under 29 U.S.C. § 185 for breach of collective bargaining agreements, and under 29 U.S.C. § 1132 for interference with rights protected by the Employee Retirement Income Security Act ("ERISA"). The court heard oral argument on this motion on June 2, 1999.

The Plaintiffs seek certification of a class composed of:

> All persons who were wage employees of Michelin, or its predecessors, who are retired and whose medical benefits were reduced by application of collective bargaining agreements dated 1994 and 1997, and the surviving spouses or dependents of such persons who are beneficiaries of the medical benefits plans provided by Michelin.

Plaintiffs' Motion for Class Certification ¶ 1. For reasons to be discussed, Plaintiffs' Motion for Class Certification is due to be GRANTED.

### II. STANDARD FOR CLASS CERTIFICATION

The question of class certification is a procedural one distinct from the merits of the action. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980).[1] In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566 (11th Cir.1992). Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Washington*, 959 F.2d at 1570 n. 11.

A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984). "A class action may be maintained only when it satisfies all the requirements of Fed.R. of Civ.Pro. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir.1997). A court must evaluate whether the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Furthermore, the court must determine whether the action may be maintained as one of the classes under Rule 23(b). The party seeking to maintain the class action bears the burden of demonstrating that all prerequisites to class certification have been satisfied. *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir.1984).

### III. FACTS

The submissions of the parties establish the following facts:

Plaintiffs seek class treatment for their claims based on Defendant Michelin's alleged reduction of health insurance benefits afforded hourly retirees. Michelin owns and operates tire manufacturing facilities in Opelika, Alabama; Tuscaloosa, Alabama; and Fort Wayne, Indiana. Michelin merged with Uniroyal Goodrich Tire Company in 1990. Uni-

---

1. In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

royal Goodrich was the product of a merger between Uniroyal, Inc. and BF Goodrich Company in the 1980's. In addition to the active manufacturing facilities, Michelin or its predecessors operated tire manufacturing plants which are now closed in Eau Claire, Wisconsin; Akron, Ohio; Miami, Oklahoma; Oaks, Pennsylvania; Chicopee, Massachusetts; Indianapolis, Indiana; and Los Angeles, California. Wage employees at these facilities are or were members of a collective bargaining group represented by the International Union of the United Steel Workers of America AFL—CIO—CLC, which recently merged with the International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America AFL—CIO—CLC. Michelin also operated textile manufacturing plants in Hogansville, Georgia; Shelbyville, Tennessee; and Exeter, Pennsylvania. A different union represented employees at those facilities.

There are nine named Plaintiffs. All of the Plaintiffs, except for Debbie Garrett, worked at Michelin's Opelika facility, which was operated prior to 1990 by Uniroyal Goodrich Tire Company, and prior to 1985, by Uniroyal, Inc. Debbie Garrett is a surviving spouse of Sanford Garrett, who worked at the Opelika facility. Sanford Garrett and all of the named Plaintiffs except Debbie Garrett retired while either the 1988 or the 1991 Pension and Insurance Agreement was in effect. There are over 10,000 retirees or surviving spouses of retirees from all Michelin facilities, active and closed. Kroczynski Dep. at 31.

A series of Pension and Insurance Agreements ("P & I Agreements"), which were the subject of collective bargaining, describe the rights and obligations of the parties in regard to medical benefits. Plaintiffs assert in this action that the P & I Agreements provide medical benefits only for active employees and those who retire during the life of the relevant P & I Agreement. Plaintiffs contend that medical benefits vested under the P & I Agreements for employees who retired during the life of a P & I Agreement and surviving spouses of such retirees. Michelin's Manager of Employee Benefits Richard Kroczynski testified that it was his understanding based on past practice that the current agreement reflects the benefits extended to all retirees. Kroczynski Dep. at 71–82. Michelin has always continued to provide medical benefits to retirees who retired under earlier P & I Agreements. *Id.* at 71, 79–82.

Plaintiffs further assert that Michelin reduced medical benefits afforded retirees and surviving spouses of retirees in P & I Agreements dated May 4, 1994 and June 12, 1997. Among the alleged reduction in benefits are an increased deductible for retirees eligible for Medicare, a cap on the level of reimbursement the company will provide to retirees for Medicare Part B premiums, an increased copay for prescriptions filled locally, a requirement that purchasers of name-brand prescription drugs pay the difference in cost between the name-brand and its generic counterpart, a $100 deductible for chiropractor visits, and a limitation of benefits to $25 per chiropractor visit. *See* Plaintiffs' Motion for Class Certification (File Doc. 21) ¶ 17. Plaintiffs contend that the case is "ideally suited" for class treatment because Michelin imposed a single wrong on all members of the proposed class by reducing medical benefits for retirees in the 1994 and 1997 P & I Agreements.

### IV. *DISCUSSION*

Plaintiffs have proposed a class of "All persons who were wage employees of Michelin, or its predecessors, who are retired and whose medical benefits were reduced by application of collective bargaining agreements dated 1994 and 1997, and the surviving spouses or dependents of such persons who are beneficiaries of the medical benefits plans provided by Michelin." Plaintiffs' Motion for Class Certification ¶ 1.

### A. Rule 23(a)

To determine whether certification of the Plaintiffs' proposed class is appropriate, the court first must evaluate whether the four requirements of Rule 23(a) are met. Federal Rule of Civil Procedure 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of

all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

## 1. Numerosity

■ The first prerequisite under Rule 23(a) is that the class must be so numerous that joinder of all members is impracticable. The Eleventh Circuit has stated, "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. At least one court has recognized that where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (citations omitted). Plaintiffs have identified over 10,000 potential class members under their proposed definition of the class. Michelin does not contest numerosity.

## 2. Commonality

■ Michelin vigorously asserts that the Plaintiffs have failed to establish the commonality, typicality, and adequacy requirements in this case. In order to meet the requisites for commonality, it is Plaintiffs' burden to demonstrate that "the issues in a class action that are subject to generalized proof and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Board of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir.1982). Courts routinely have recognized that the commonality requirement is "not high." *Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694, 697 (M.D.Ala.1997). Rather, the rule only requires that there be "questions of law or fact common to the class." F.R.Civ.Pro. 23(a)(2) (emphasis added). Commonality may be satisfied, therefore, even if there are factual discrepancies, and even if there are individu-

al differences with damages. *See Taylor v. Flagstar Bank*, 181 F.R.D. 509, 516 (M.D.Ala.1998).

Plaintiffs assert that the issue of whether medical benefits vested under the P & I Agreements is common to the class, as is Michelin's alleged wrongful reduction of benefits. Michelin contends that, because Plaintiffs must show that the parties intended for medical benefits to vest, the presence of multiple P & I Agreements entered into by separate companies defeats commonality and renders class certification inappropriate.

■ ERISA divides employee benefit plans into two categories: welfare benefit plans and pension plans. *See* 29 U.S.C. §§ 1002(1); 1002(2)(A). "Unlike pension benefits, which are subject to stringent vesting requirements under ERISA, welfare benefits, such as health care insurance, are vested only if so provided by contract." *International Ass'n of Machinists v. Masonite Corp.*, 122 F.3d 228, 231 (5th Cir.1997) (citing 29 U.S.C. § 1051(1)); *see also Alday v. Container Corp. of America*, 906 F.2d 660, 665 (11th Cir.1990). ERISA "does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995). Thus, whether a collective bargaining agreement vests health insurance benefits in retired employees is a question of contractual interpretation.

Plaintiffs contend that, upon their retirement, their medical benefits vested under the applicable P & I Agreement and could not be lowered. They assert that nearly identical language from various P & I Agreements indicates an unambiguous intent that the benefits vest. In the alternative, they submit that extrinsic evidence in the form of statements and conduct of the parties demonstrates the requisite intent. Plaintiffs also provided the court with deposition testimony from Michelin's Manager of Employee Benefits, Richard Kroczynski, wherein Mr. Kroc-

zynski stated that Michelin treats retirees as "[o]ne big group." Kroczynski Dep. at 47.

Michelin asserts that Plaintiffs cannot bring a single class action based on allegations that Michelin breached multiple collective bargaining agreements entered into by four different companies over the course of nearly thirty years. Reversing certification of a class of franchisees, the Fourth Circuit noted, "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir.1998). Several federal courts, however, have certified classes asserting similar claims as the Plaintiffs in the present case, even when class members asserted contractual rights under different agreements. *See Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993); *Fox v. Massey–Ferguson, Inc.*, 172 F.R.D. 653, 661 (E.D.Mich.1995); *Murphy v. Keystone Steel & Wire Co.*, 850 F.Supp. 1367, 1369–70 (C.D.Ill.1994); *Bower v. Bunker Hill Co.*, 114 F.R.D. 587 (E.D.Wash.1986).

In *Forbush*, vested retirees under the J.C. Penney Company Pension Plan challenged the plan's method of estimating Social Security benefits as violative of ERISA. Though the proposed class encompassed members asserting claims under four separate pension plans with four separate ways of calculating Social Security benefits, the court found the common issue of Penney's alleged overestimation of Social Security benefits sufficient to meet the commonality requirement. *See Forbush*, 994 F.2d at 1106 (5th Cir.1993). In *Bower*, the court certified a class of present and future pensioners presenting claims for reduction in allegedly vested medical benefits. Claimants asserted rights under multiple agreements, but the court found that each agreement contained identical, ambiguous language, and all union employees relied on substantially the same extrinsic evidence. *Bower*, 114 F.R.D. at 593.

In *Fox*, the plaintiffs sought class certification for their claims that the defendant violated ERISA and the LMRA by reducing the medical benefits afforded to retirees and others. They contended that the class consisted of approximately one thousand members, all of whom were entitled to lifetime health care benefits pursuant to the terms of various collective bargaining agreements and insurance agreements between Massey–Ferguson and the UAW. *Fox*, 172 F.R.D. at 660. The court found commonality because the issue of Massey–Ferguson's administrative decision to change medical benefits was common to all plaintiffs and represented the major component of the relief that they sought to obtain. *See id.* at 661. The court found commonality despite various oral and written representations on which the plaintiffs relied. *See id.*

In *Murphy*, a district court certified a class of "all former bargaining unit employees of Keystone who retired from Keystone prior to May 3, 1993, and who had not attained the age of 65 before July 1, 1993." *Murphy*, 850 F.Supp. at 1369–70. The claims concerned the obligation of the defendant company to provide health care benefits for retirees under a series of Collective Bargaining Agreements entered into between the company and the union during the period from February 4, 1960 to May 3, 1993. *See id.* at 1370.

■ In the present case, Plaintiffs assert, on behalf of themselves and the proposed class, rights to vested medical benefits under several different P & I Agreements. The proposed class includes those who retired under P & I Agreements negotiated separately with B.F. Goodrich, Uniroyal, Inc., Uniroyal Goodrich, and Michelin. Plaintiffs have submitted to the court fourteen P & I Agreements effective prior to the 1994 P & I Agreement which allegedly reduced medical benefits. All of the Agreements contain similar provisions affording medical benefits to retirees and surviving spouses of retirees. The 1991 P & I Agreement states, "Employees who retire and who are eligible under the 1991 Pension and Insurance Agreement for a Pension (other than a Deferred Vested Pension), shall receive the benefits described in this Article.... The surviving spouse of an Employee who is retired by the Company on or after the effective date of this Agreement shall continue to be eligible to receive such benefits to the earlier of the date of death or

remarriage...." May 3, 1991 Uniroyal Goodrich P & I Agreement, at 219–20.

Plaintiffs contend that the phrase "shall receive the benefits described," applicable to retirees, and the phrase "shall continue to be eligible to receive such benefits," applicable to surviving spouses of retirees, unambiguously indicate that the medical benefits are vested. The 1988 Uniroyal Goodrich P & I Agreement and the various B.F. Goodrich P & I Agreements which the Plaintiffs submitted to this court contain identical phrases.[2] The P & I Agreements entered into by Uniroyal, Inc., which the Plaintiffs submitted, contain an identical phrase applicable to surviving spouses of retirees, and provide that retirees "shall continue to receive" the benefits described in the relevant Agreement.[3]

Thus, the language at issue is nearly identical in each P & I Agreement. Richard Kroczynski testified that the Goodrich and Uniroyal plans were "virtually identical." Kroczynski Dep. at 56. Moreover, the court notes that Michelin relies on language found in "each contract" extinguishing the existing collective bargaining agreement to counter Plaintiffs' allegation that each contract vests medical benefits for retirees. *See* Defendant's Brief in Opposition (File Doc. 27) at 12–13.

Michelin strongly asserts that the language in the P & I Agreements at the very least is ambiguous, necessitating that the Plaintiffs prove intent with extrinsic evidence. All of the Plaintiffs worked at the Opelika facility and retired under either the 1988 or 1991 P & I Agreements. They have submitted evidence of conversations with plant managers at Opelika in which the managers promised lifetime medical benefits without reduction for retirees. Michelin contends that the Plaintiffs' reliance on evidence of statements made by lower-level managers in Opelika demonstrates the individual nature and lack of commonality in their claims.

Plaintiffs primarily claim, however, that the P & I Agreements demonstrate an unambiguous intent to vest medical benefits for those who retire under the applicable Agreement. Extrinsic evidence "is not admissible to contradict the terms of an unambiguous contract. Moreover, it is not even admissible to establish ambiguity; any ambiguities must be created by the language of the contract itself." *Stewart v. KHD Deutz of America, Corp.*, 980 F.2d 698, 702 (11th Cir. 1993). After it is established that a contract is ambiguous, extrinsic evidence is admissible to explain that ambiguity. A contract is ambiguous when it is reasonably susceptible to more than one interpretation. *See id.*

Given the Plaintiffs' contention that the P & I Agreements unambiguously vest medical benefits for retirees and surviving spouses, consideration of the impact of extrinsic evidence is premature. Michelin presently treats retirees as "one big group," without regard to facility, company, or collective bargaining agreement. The provisions at issue in the P & I Agreements are virtually identical. Therefore, the Plaintiffs have demonstrated questions of law and fact sufficient to meet the commonality requirement in Rule 23(a). Commonality under Rule 23(a) is a low hurdle over which the Plaintiffs have leapt at this stage.

### 3. Typicality and Adequacy of Representation

To establish typicality, there must be a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984). A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory. *Id.* at 1337. As with commonality, differences in damages are not enough to deny typicality; and the differences in the

---

2. *See* July 15, 1967 Goodrich P & I, at 32–33; June 13, 1970 Goodrich P & I, at 36–37; Sept. 6, 1976 Goodrich P & I, at 59; April 21, 1979 Goodrich P & I, at 64; Apr. 21, 1985 Goodrich P & I, at 70; Apr. 28, 1988 Uniroyal Goodyear P & I, at 173.

3. *See* July 26, 1967 Uniroyal P & I, at 33–34; June 30, 1970 Uniroyal P & I, at 23; June 11, 1973 Uniroyal P & I, at 45–46; Sept. 3, 1976 Uniroyal P & I, at 86–87; Apr. 21, 1985 Uniroyal P & I, at 107.

claims themselves must be something more than minimally different. *Id.* (allowing class certification because claims of named representative were not "markedly different than the claims of the rest of the class").

■ "The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to those of the rest of the class." *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985) citing *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir.1969). The Eleventh Circuit has stated, "[A]dequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir.1987). There is no issue in the present case concerning the competency of class counsel.

In *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Supreme Court stated:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

■ Michelin vigorously asserts that a conflict of interest inherent in the Plaintiffs' theory for recovery renders the named Plaintiffs' claims atypical of the class and illustrates that the named Plaintiffs cannot adequately represent the class that they have proposed. Plaintiffs contend that each P & I Agreement applied only to employees who were active at the time the P & I Agreement

became effective. An employee who retired during the time that the P & I Agreement was in effect, or the surviving spouse of such an employee, received medical benefits under the relevant provision of the Agreement. According to the Plaintiffs, those medical benefits were vested, entitling retirees and surviving spouses of retirees to at least the level of benefits set forth in the P & I Agreement for life.

The named Plaintiffs all retired from the Opelika facility under the 1988 or 1991 collective bargaining agreements. According to Michelin, Plaintiffs' theory for recovery would benefit the named Plaintiffs while harming those potential class members who would find their medical benefits locked into their status at the time of retirement under older collective bargaining agreements. Michelin contends that the named Plaintiffs, who retired when medical benefits supposedly were at their zenith, have everything to gain and nothing to lose, whereas older retirees would receive no benefit.

According to Michelin, if the named Plaintiffs prevail, the "make whole" relief to which the class would be entitled would differ based on the level of medical benefits in place under each P & I Agreement. Those who retired under the 1988 or 1991 P & I Agreements may have benefits restored at a higher level, while class members who retired under earlier P & I Agreements may actually see their medical benefits reduced. Michelin asserts that the Plaintiffs' proposed class definition is too vague for the same reason. Older retirees whom the Plaintiffs seek to represent may not have had the benefits to which they are entitled "reduced" by the 1994 and 1997 P & I Agreements.

Plaintiffs assert, however, that all retirees have been harmed by the reduction of identifiable benefits in the 1994 and 1997 P & I Agreements. Plaintiffs have identified certain benefits which all employees who retired prior to the effective date of the May 4, 1994 P & I Agreement, and surviving spouses of such employees, received. They further assert that those retirees and surviving spouses were entitled to those identifiable benefits, and that Michelin illegally reduced those

benefits by increasing the deductible, freezing Medicare Part–B premium benefits, and increasing co-pays for prescription drugs.

The court expressed its concern for potential class conflicts in the hearing on Plaintiffs' Motion for Class Certification. Whether the members of the proposed class are due relief, however, is not an issue for resolution at this time. *See Wyatt By and Through Rawlins v. Poundstone,* 169 F.R.D. 155, 164 (M.D.Ala. 1995). Plaintiffs have alleged that Michelin's unilateral decision to reduce medical benefits harmed all members of the purported class. Plaintiffs have also alleged that all purported class members would benefit from relief enjoining Michelin to restore retirees to their full benefits as they existed prior to the changes. The proposed class is limited by definition to retirees and surviving spouses whose benefits were reduced.

Doubts regarding the propriety of class certification should be resolved in favor of certification. *See Buford v. H & R Block, Inc.,* 168 F.R.D. 340, 346 (S.D.Ga. 1996), *aff'd* 117 F.3d 1433 (11th Cir.1997) (citing 4 H. Newberg & A. Conte, *Newberg on Class Actions* § 7540 (3d ed.1992)). At this stage in the litigation, the Plaintiffs have demonstrated a sufficient nexus between their claims and the claims of the class to satisfy the typicality and adequacy of representation requirements in Rule 23(a). If warranted by subsequent developments, the court may revisit its decision on class certification. Federal Rule of Civil Procedure 23(c)(1) states, "An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." As noted by the Supreme Court, the flexibility afforded by conditional certification "enhances the usefulness of the class action device" so as to ensure the trial court that "actual, not presumed, conformity with Rule 23(a)" exists. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

**B. Rule 23(b)**

Having determined that the Plaintiffs meet the prerequisites for maintenance of a class action under Rule 23(a), the court must also determine whether the action may be maintained as one of the classes under Rule 23(b). In their Complaint, the Plaintiffs state that they bring this action under Rule 23(b)(1) and (b)(2). Compl. ¶ 5. They specifically request certification under Rule 23(b)(2). Compl. ¶ 11. Federal Rule of Civil Procedure 23(b)(2) provides:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition
>
> . . .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

The Plaintiffs originally requested both compensatory and punitive damages, in addition to declaratory and injunctive relief. Compl. ¶ 11. In *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998), the Fifth Circuit, citing the advisory committee notes to Rule 23(b)(2), stated that certification under (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages." *Id.* at 411 (quoting Fed.R.Civ.P. 23 (advisory committee notes) (emphasis added)). The court elaborated as follows:

> [M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.

*Id.* at 415 (citations omitted) (emphasis added).

According to the *Allison* court, the predomination requirement serves two purposes—it protects the legitimate interests of potential class members who might wish to pursue their monetary claims individually, and it preserves the legal system's interest in judicial economy. *Id.* at 413–14. In three recent cases, this court adopted the predomination analysis espoused in *Allison. See Faulk v. Home Oil Co., Inc.*, 184 F.R.D. 645 (M.D.Ala.1999). *Pickett v. IBP, Inc.,* 182 F.R.D. 647, 657 (M.D.Ala.1998); *Taylor v. Flagstar Bank,* 181 F.R.D. 509, 518 (M.D.Ala.1998).[4]

The Eleventh Circuit has held that extra-contractual and punitive damages are not available in a hybrid LMRA/ERISA action. *See Stewart v. KHD Deutz of America Corp.,* 75 F.3d 1522, 1528 (11th Cir.1996). In the present case, the court requested that the Plaintiffs address in oral argument their requested monetary damages and the applicability of Allison. Plaintiffs conceded that they were not seeking extra-contractual or punitive damages. Plaintiffs seek injunctive relief ordering Michelin to restore retirees to their full medical benefits as they existed before the changes in the 1994 and 1997 P & I Agreements. Compl. ¶ 11. The monetary relief which they seek is the restoration of benefits taken away in the 1994 and 1997 P & I Agreements. The court is satisfied that such requested monetary relief is incidental to the requested injunctive relief, allowing certification under Rule 23(b)(2). Plaintiffs have alleged that Michelin acted on grounds generally applicable to the class when it reduced medical benefits for retirees in the 1994 and 1997 P & I Agreements, making appropriate final injunctive relief with respect to the class as a whole. Therefore, the proposed class meets the requirements of Rule 23(b)(2).

## V. *CONCLUSION*

For the reasons discussed, the court finds that the Plaintiffs' Motion for Class Certification is due to be and is ORDERED GRANTED, and the following class is conditionally certified:

All persons who were wage employees of Michelin North America, Inc., or its predecessors, who are retired and whose medical benefits were reduced by application of collective bargaining agreements dated May 4, 1994, and June 12, 1997, and the surviving spouses or dependents of such persons who are beneficiaries of the medical benefits plans provided by Michelin.

---

4. In *Taylor,* the court actually cited to the first panel opinion in *Allison,* which was withdrawn and substituted by the opinion published in the Federal Rules Decision Reporter. The published opinion altered the withdrawn opinion only by expanding the court's treatment of the an issue concerning the Seventh Amendment and bifurcation of disparate impact and disparate treatment claims. Thus, the portion to which the *Taylor* opinion cites remains good law.