DECISION
Before the Court is the motion of plaintiff Paul A. Decesare (Decesare or policy-holder)[1] for class certification and defendant Lincoln Benefit Life Company's objection to the same. Jurisdiction is pursuant to Super. R. Civ. P. 23.
 FACTS AND TRAVEL
In 1987, plaintiff Decesare purchased an annuity policy from defendant Lincoln, an insurance company offering its products to the public. Plaintiff purchased a Saver's Index Annuity policy (Policy or Policies). Lincoln sells its Policies to customers throughout the United States via independent contractors. These agents are not employees of Lincoln.
The Policies are premium deferred annuity plans which provide monthly pay-outs to policy-holders. The pay-outs are calculated on the basis of the accumulated value of the initial premium with reference to the Standard and Poor's 500 Stock Index (SP Index). A certain percentage of the SP Index is applied yearly to the Policies, subject to a mandatory limit. The Policy indicates that Lincoln retains an annual right to both set the percentage of the SP Index applied to the Policies each year, known as the Index Participation Rate (Rate) and to declare the applicable limit or Cap to which the Policies are annually subject. The Policy has a choice of law provision that subjects each contract to the law of the state in which the Policy application is signed.
Pursuant to its right to set the annual Policy Rate and Cap, Lincoln made an internal decision for the 1998-1999 contract year to reduce the Rate and Cap from 80% and 14%, to 70% and 12% respectfully. Following its standard practice with regard to setting the annual Rate and Cap, Lincoln, through its Interest Rate Committee, assisted by its Actuarial Department, determined the annual Rate and Cap and announced them internally via e-mail prior to the anniversary dates of the various Policies. The Policy required Lincoln to send policy-holders a statement or status report regarding the Rate and Cap 30 days after each Policy anniversary date.
Plaintiff is among a group of policy-holders with Policy anniversary dates between February 7 and February 24, 1998. In February 1998, this group received annual Policy statements indicating that the annual Rate and Cap would be 80% and 14% respectfully. On March 3, 1998, however, these policy-holders received amended Policy statements noticing them that there would in fact be a reduction in the applicable Rate and Cap from 80% and 14% to 70% and 12%. The new rates were stated within the amended Policy statements with nothing further referencing the changes or making policy-holders aware of them. Lincoln made no additional attempt to indicate the Rate and Cap reductions to the policy-holders.
Generally, when Lincoln issues various Policy statements to its policy-holders, it sends a copy of that statement to the policy-holders' insurance agent as well. Presumably, the insurance agent is in a better position to understand the Policy statement and to explain any changes or answer questions that a policy-holder may have. In this case, however, Lincoln did not send a copy of the amended Policy statement to plaintiff's insurance agent or to the insurance agents of any of the policy-holders in the group mentioned above.
After learning of Lincoln's actions with respect to the Rate and Cap reductions, plaintiff commenced this action on April 21, 1999, on his own behalf and on behalf of all others similarly situated. Plaintiff seeks a mandatory injunction that would require Lincoln to retroactively apply to the Policies the initial 80% Rate and 14% Cap for the 1998-1999 contract year. Plaintiff seeks the difference between the value he would have received under the initially communicated Rate and Cap and the value he actually received under the amended Policy for that year. Plaintiff also seeks declaratory relief and compensatory and punitive damages for five causes of action including declaratory judgment, breach of contract, breach of implied duty of good faith and fair dealing, negligent misrepresentation, and bad faith under Gen. Laws 1956 § 9-1-33 (1984 Cum. Supp.). Plaintiff seeks to represent a class consisting of all purchasers of Policies from Lincoln during the period from January 1, 1996 through December 31, 1997 with respect to the claims for declaratory judgment, breach of contract and breach of duty of good faith and fair dealing only.
 DISCUSSION
In Rhode Island, class actions are governed by Rule 23 of the Superior Court Rules of Civil Procedure. In order to achieve certification as a class, a group of plaintiffs must satisfy the requirements set forth in subsections (a) and (b) of Rule 23. The Rhode Island Supreme Court has stated that, while those plaintiffs seeking class certification bear the burden of proving that these requirements are met, the burden is not "heavy." See Cabana v. Littler, 612 A.2d 678, 686 (R.I. 1992). The Court further stated that a court contemplating class certification should err in favor of granting class certification early in the litigation for two reasons: 1) it alerts all parties that the matter will be litigated as a class action, and 2) the decision is not final because the court retains "power to subdivide, modify or decertify the class at any time prior to judgment." Id.
 RULE 23(a)
The first step in class certification is to examine whether the proposed class meets the requirements set forth in Rule 23(a). Rule 23(a) states that class certification is appropriate when: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Super. R. Civ. P. 23(a).
 THE CLASS IS SO NUMEROUS THAT JOINDER OF ALL CLASS MEMBERS WOULD BE IMPRACTICABLE
Whether or not a proposed class is so numerous that joinder of all class members would be impracticable should be evaluated on a case by case basis where a number of factors may be considered. See Cohen v. Harrington, 722 A.2d 1191, 1196 (R.I. 1999). While the sheer size of a class alone may satisfy the numerosity requirement, the Court must consider other factors such as the practicality of joinder of each individual plaintiff. See Dale Electronics, Inc. v. R.C.L. Electronics, Inc., 53 F.R.D. 531, 534 (D.N.H. 1971). Rule 23 does not require that joinder be impossible but merely impracticable. 7A C. Wright A. Miller, et al., Federal Practice and Procedure, § 1762 at 159 (2d ed. 1986).
In this case, the proposed class encompasses approximately 1,187 members.[2] The large number of potential class members alone satisfies the numerosity requirement. See Brandt v. Owens-Illinois, Inc., 62 F.R.D. 160, 164-165 (S.D.N Y 1973) (holding that the numerosity requirement was satisfied because the proposed class consisted of "hundreds, if not thousands"). Moreover, Lincoln sells its products to customers in nearly every state in the nation. As a result, common sense dictates that it would be impracticable to join each class member as they are spread across the country. See Gorsey v. I.M. Simon Co., 121 F.R.D. 135, 138 (D.Mass. 1988) (holding that joinder of a group nearing 900 and stretched across the country would be impracticable).
The issue of practicality raises two additional questions. The first question is whether each proposed class member has the financial resources to pursue his or her claim on an individual basis. See Committee of Blind Vendors v. District of Columbia, 695 F. Supp. 1234, 1242 (D.D.C. 1988). The second issue is whether the relief sought by an individual class member is substantial enough on its own to merit the efforts of litigation.
Class certification is a tool available to the Court to encourage judicial economy by allowing one representative with similar claims to sue on behalf of a group of similarly situated people that is too large to practicably join in the litigation. See Super. R. Civ. P. 23; H. Newberg A. Conte, Newberg on Class Actions, § 1.01 (3d ed. 1992). More importantly, class actions provide motivation for individuals to pursue claims that they may not otherwise pursue because individual recovery would be too small to warrant litigation. See Phillips Petroleum v. Shutts, 472 U.S. 797, 809 (1985).
In this case, if each individual policy-holder brings his/her own suit against Lincoln, recovery would not amount to more than the difference between the value that policy-holder would have received under the initially communicated Rate and Cap and the value he or she received under the amended Policy statement. This difference in value represents small monetary relief. As a result of the fact that each individual class member in this case would probably not recover enough in a similar individual action to warrant the costs of litigation, it follows that each proposed class member does not have the financial resources to pursue such nominal claims. However, if these claims are tried in the aggregate as a class action, the costs of litigation will be allayed and the recovery, if awarded, will be substantial, thus justifying the effort and expense of litigation.[3] Thus, class certification is appropriate under Rule 23(a)(1).
The Rhode Island Superior Court has jurisdiction over civil claims of $5000 and above. See G.L. 1956 § 8-2-14. In Carvalho v. Coletta,457 A.2d 614, 616 (R.I. 1983), the Rhode Island Supreme Court adopted the United States Supreme Court's standard regarding the aggregation of individual claims in a class action. Class members may aggregate their individual claims in a class action in order to satisfy a court's prerequisite jurisdictional amount only when those claims represent a single shared right in which all the class members have a common and undivided interest. See Carvalho v. Coletta, 457 A.2d 614, 616 (R.I. 1983). The claims cannot be divisible. See id. Claims are divisible when each individual class member has a separate and distinct claim in a single suit.[4] See Freitas v. First N.H. Mrtg. Corp,, C.A. 98-211ML, 1998 U.S. Dist. LEXIS 15698, at *10 (D.R.I. July 23, 1998). If they are divisible then they cannot be aggregated to satisfy the prerequisite jurisdictional amount. See id. When the claims are divisible, each individual claim must satisfy that court's requisite jurisdictional amount in order for that court to maintain subject-matter jurisdiction over the entire class. Id.
In this case, each individual claim of the proposed class members is divisible because each Policy represents separate rights reserved for each policy-holder. The policy-holders do not share one common right against Lincoln. Certainly, if one policy-holder did not collect from Lincoln, the shares of the remaining plaintiffs would not increase. Thus, in order for this Court to maintain subject-matter jurisdiction over the proposed class action, each individual member of the class must have a claim for at least $5000 against Lincoln. Because there is no evidence to show that this requirement is satisfied, class certification would otherwise fail but for the equitable relief plaintiff seeks in the form of a mandatory injunction. Because the Rhode Island Superior Court has sole jurisdiction over issues of equity, such as the granting of a mandatory injunction, subject-matter jurisdiction over the proposed class in this case is in fact proper in this Court. See G.L. 1956 §8-2-13.[5]
 THERE ARE QUESTIONS OF FACT AND LAW COMMON TO ALL CLASS MEMBERS
Class certification is appropriate where there are questions of fact and law that are common to all proposed class members. See Super. R. Civ. P. 23(a)(2). Under Rule 23(a)(2), commonality requires that "questions of law or fact common to the class exist" and the representative plaintiff's claims share at least one question of fact or law with the claims of the prospective class. See Caranci v. Blue Cross 
Blue Shield, 1999 WL 7664, at *12 (D.R.I. August 19, 1999). This is not an exacting standard as complete identity or predominance of claims is not required for class certification. See id.; A. Miller, An Overview of Federal Class Actions, 25 (1977). Commonality can arise when every member of a purported class receives a document which becomes the main issue of litigation. See Bertozzi v. King Louie Int'l, Inc., 420 F. Supp. 1166, 1176 (D.R.I. 1976).
In this case, commonality is satisfied by the fact that all the proposed class members purchased substantially identical Policies, agreed to the same contract terms and were all allegedly harmed by Lincoln's actions between February and March 1998. Clearly, this proposed class is similar to the class in Bertozzi because each proposed member in this case received an initial Policy statement as well as an amended Policy statement. The Policies shared the same wording, as did the Policy statements announcing the annual Rate and Cap. The circumstances surrounding these Policy statements, as well as the statements themselves, are the subject of this litigation. There is no instance where the Court must consider facts independent of the documents or Lincoln's actions between February and March 1998 in order to resolve this case. Thus, the commonality requirement is satisfied in this case because the Court will be called upon to apply the same legal principles to resolve claims arising from a set of facts common to all the proposed class members. Class certification is thus appropriate under Rule 23(a)(2).
 THE CLAIMS OF THE NAMED PLAINTIFFS ARE TYPICAL OF THE PROPOSED CLASS
Rule 23(a)(3) requires that the claims of the named plaintiff in a class action be typical of the entire class in order to assure that the claims of the class will be advanced if for no other reason than the plaintiff's own self-interest in the outcome of the litigation. See In re United Energy Corp., 122 F.R.D. 251, 256 (C.D.Cal. 1988); Wright and Miller, § 1764. A plaintiff's claims are typical of a class when his claims arise from the same set of facts that give rise to the claims of the other class members and are based on the same legal theory. See In re United Energy Corp., 122 F.R.D. at 256. As long as the representative plaintiff and the class are injured by the same sequence of events, factual discrepancies among the various claims will not defeat typicality. See Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994).
Like the foregoing commonality analysis, the typicality requirement is satisfied in this case as well. The plaintiff's claims are based on Policy documents common to all proposed class members, as well as Lincoln's conduct with regard to the Policy statements between February and March 1998. These are the same facts giving rise to any potential claim of any individual proposed class member. It is clear that by pursuing his own interest in the outcome of this case, plaintiff will benefit the entire class and advance the members' interests because his claims align with those of the entire class. Thus, the Rule 23(a)(3) requirement is met in this case as well.
 THE PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS
Finally, with regard to Rule 23(a)(4), plaintiffs in a class action must fairly and adequately represent the entire proposed class. Super. R. Civ. P. 23(a)(4). There are two factors to consider when determining whether the adequacy and fairness requirements are satisfied. The first consideration is whether counsel for the representative plaintiff is "qualified, experienced, and generally able to conduct the proposed litigation." Eisen v. Carlisle Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968). Second, no conflict of interest may exist between the representative plaintiff and any of the other proposed class members. Id. To determine this, the Court must examine whether an alleged conflict "go(es) to the very subject of the litigation." Caranci, 1999 WL 766974, at *17. The burden of disproving adequacy is on the party objecting to it. Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir. 1992).
In this case, representation of the proposed class by the named plaintiff would be fair and adequate. First, plaintiff's counsel, Adler Pollock Sheehan (APS), is qualified to conduct this litigation. APS is a large Rhode Island law firm with both the financial and the substantive resources to conduct litigation of this size and intricacy. According to plaintiff's attorney, APS has handled numerous class actions, both as plaintiffs' and defendants' representatives depending on the case. Attorneys from APS appear before this Court frequently, handling a variety of business related issues. Furthermore, plaintiff's attorney has already demonstrated his ability to litigate this case. He has labored through enough discovery to establish a sufficient factual record as required to proceed to trial at this point. Clearly, APS has the resources, both financially and in terms of legal experience, to handle the case at hand.
Second, there is no conflict of interest between the named plaintiff and any of the proposed class members in this case. There are no facts to indicate that plaintiff's interest in this case is different or contrary to any of the proposed class members' interests. Again, plaintiff's claims arise from the same set of facts that give rise to the claims of all of the proposed class members. There are no legal or factual discrepancies between the claims of plaintiff and any members of the proposed class. Plaintiff brings this action based on contract language that is common to the contracts between the defendant and each proposed class member. Thus, the requirements of Rule 23(a)(4) are satisfied.
 RULE 23(b)
After the four prerequisites of Rule 23(a) are satisfied, the Court must next determine whether an action is maintainable under Rule 23(b). An action is maintainable under Rule 23(b) when at least one of the subsections is satisfied. A class action is maintainable in this case under both Rule 23(b)(2) as well as Rule 2(b)(3).
 CLASS SEEKING INJUNCTIVE RELIEF
Under Rule 23(b)(2), class certification is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory judgment with respect to the class as a whole." Super. R. Civ. P. 23(b)(2). The rule does not require, however, that every member of the proposed class actually "be aggrieved by or desire to challenge the defendant's conduct. . . ." Jones v. Diamond,519 F.2d 1090, 1100 (5th Cir. 1975). Rather, Rule 23(b)(2) requires that each member of the proposed class would have standing to challenge the defendant's conduct if he/she so chose to because the conduct at issue is common to all class members. Id. at 1100. Further, "where the litigation seeks to define the relationship between the defendant and the world at large" and the relief sought by the named plaintiff will benefit the entire class, certification is appropriate under Rule 23(b)(2). Baby Neal v. Casey, 43 F.3d at 58.
In this case, plaintiff's claims arise from Lincoln's application of a lower Rate and Cap to the Policies of the proposed class members for the 1998-1999 contract year. This resulted in a decrease in value of the interest earned on those Policies by the class members for that year. Plaintiff seeks an order declaring that the initial Policy statement issued in February 1998, declaring an 80% Rate and a 14% Cap, constitutes a "declaration in advance" of the anniversary date as required by the Policy, which Lincoln is contractually bound to apply to the Policies for that year. As a result, plaintiff also seeks a mandatory injunction requiring Lincoln to retroactively apply the 80% Rate and the 14% Cap to the class members' Policies and recalculate the interest over time.
Lincoln objects to class certification under Rule 23(b)(2), claiming that the award plaintiff seeks is not equitable, as required by Rule 23, but simply money damages rendering certification inappropriate under this section of Rule 23. This argument is unavailing. Even though plaintiff's relief, if awarded, would take the form of money, this is not a simple award of relief resulting from loss due to contract breach. Plaintiff seeks equitable relief in the form of a mandatory injunction which would require Lincoln to retroactively apply the initial 80% Rate and 14% Cap to their Policies for the 1998-1999 contract year. Plaintiff claims that in order to make the proposed class whole as a result of Lincoln's application of a lower Rate and Cap to their Policies, a mandatory injunction is necessary in order for the policy-holders to receive the Policy interest they are entitled to under their contract with Lincoln. Thus, plaintiff calls upon this Court to do equity and compel Lincoln to carry out the terms of its contract with the policy-holders in order for them to receive the actual benefit of their bargain with Lincoln.
Plaintiff argues, and this Court agrees, that the proposed class here is similar to the class certified in Groover v. Michelin North Am., Inc., 187 F.R.D. 662 (N.D.Ala. 1999), where in a class of retirees, claiming their former employer had unilaterally changed healthcare benefits provided to them under certain pension and insurance agreements, was certified because the plaintiffs sought injunctive relief to restore them to their positions under the contract before their employer's changes. The plaintiffs in Groover sought monetary relief for past deprivation of such benefits. Plaintiff in this case also seeks monetary relief for past deprivation of Policy interest resulting from Lincoln's reduction in the applicable Rate and Cap for 1998-1999. Like Groover, class certification is appropriate here under Rule 23(b)(2) because Lincoln's reduction in the Rate and Cap for 1998-1999 was "generally applicable to the class" which may warrant "final injunctive relief with respect to the class as a whole." Id. at 671.
 QUESTIONS OF LAW OR FACT COMMON TO THE CLASS MEMBERS PREDOMINATE OVER ANY QUESTIONS AFFECTING ONLY INDIVIDUAL CLASS MEMBERS
Under Rule 23(b)(3), a class action is maintainable when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Super. R. Civ. P. 23(b)(3). While a Rule 23(b)(3) analysis may be similar to a Rule 23(a) commonality analysis, the Rule 23(b)(3) test is actually more rigorous than its section (a) counterpart because after determining commonality, the Court must determine that those common issues predominate over any individual claims that may exist. While the predominance test is more rigorous than a commonality assessment, it is not overly restrictive. See Lerch v. Citizens First Bancorp., Inc., 144 F.R.D. 247, 252 (D.N.J. 1992). Where plaintiffs' claims arise from a single course of action by the defendant and each class member's claim or defense does not require separate adjudication, the predominance test is met. See Seidman v. American Mobile Sys., Inc., 157 F.R.D. 354, 366 (E.D.Pa. 1994); Wright 
Miller, § 1778. Further, courts have held that a question regarding the amount of damages suffered by an individual class member is not enough to defeat certification where common questions of liability predominate. See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977).
A class action is maintainable in this case under Rule 23(b)(3) because common questions of both fact and law predominate over any individual claim. As discussed at length above, any individual claim in this case arises from both a Policy which is common to all the policy-holders and a course of action taken by Lincoln that affected the Policies of each proposed class member. Aside from the need to calculate the amount of damages suffered by each individual class member, which does not by virtue of itself destroy certification, there is nothing indicating that there are any divergent individual claims necessitating separate litigation and rendering certification inappropriate.
The three questions common to all class members in this case are:
 i) Is the mailing of the annual statement to a class member a "declaration" of the next year's Rate and Cap?
 ii) Does Lincoln have the contractual right to reduce unilaterally the annual Rate and Cap applicable to each Policy, once the annual Rate and Cap are declared?
 iii) Did the 1999 amended policy statement effectively and permissibly reduce the annual Rate and Cap applicable to each Policy after having declared another Rate and Cap through the annual statement?
Because these three questions arise from a factual scenario that is common to all the proposed class members, their resolution will bind the entire class.
With regard to the predominance of the legal questions involved in this case, Lincoln contends that predominance is defeated by the fact that the choice of law provision in the Policy requires that different state law would apply to each individual claim. However, for purposes of class certification, this Court cannot assume that the substantive law of all pertinent jurisdictions contemplated in said choice of law provision is so variant as to defeat predominance. Furthermore, nothing has been presented to this Court that would indicate otherwise. In absence of any evidence that there is a wide variance among state contract law, this Court will apply Rhode Island choice of law rules governing contract disputes. These rules dictate that the state where "the final act which constitutes making of [a] contract" was completed will govern the interpretation of that contract. General Acc. Insurance. Co. v. Budget Rent-A-Car Sys., Inc., 1999 WL 615737, at *1 (R.I. Super. Ct. Aug. 2, 1999).
Lincoln contends that no Policy issued by it is effective or binding on Lincoln until the Policy is approved and executed by Lincoln's home office in Lincoln, Nebraska. This execution by the home office constitutes a final act which, under Rhode Island choice of law rules, initiates the application of Nebraska law to the class claims in this case. Thus, under this analysis, there are no legal questions which arise as to specific class members since all claims will be resolved under the laws of the state of Nebraska.
This Court recognizes, however, that if questions arise during the course of this litigation over the choice of the substantive law to be applied, there are tools the Court can employ to resolve those questions. For example, under Rule 23 (d), the Court may break the class into sub-classes based on the substantive law that will apply to their claims. Further, the Court may decertify the class if, upon examination of the laws of the different jurisdictions, the Court finds that the relevant substantive laws are so divergent as to defeat predominance and destroy certification. At this initial phase of the litigation, however, this Court does not find that analysis relevant, and finds that the predominance requirement of Rule 23(b)(3) is satisfied in this case.
 A CLASS ACTION IS SUPERIOR TO OTHER METHODS OF ADJUDICATION
Finally, Rule 23(b)(3) requires that in order to receive class certification, "class action is superior to other available methods for fair and efficient adjudication of the controversy." Super. R. Civ. P. 23 (b)(3). In other words, "a class action must be the best method of adjudication." Zarrella v. Minnesota Mutual Life Insurance, Co., 1999 WL 226223, at *10; 5 Moore's § 23.48[1], at 23-25. The Court must consider the following four factors to determine whether this requirement is satisfied:
 "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
 (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
 (D) the difficulties likely to be encountered in the management of a classification." Super. R. Civ. P. 23(b)(3).
In this case, class action is the best method of adjudication. First, as previously discussed, because individual relief in this case would be nominal, many policy-holders may be discouraged from enforcing their contract rights against Lincoln due to the high cost of litigation. However, faced with the possibility of a substantially greater aggregate reward, consolidation of numerous small claims will alleviate and justify the high costs of litigation.
Second, due to the commonality of the facts and the law in this case, there is little possibility that any one member of the proposed class would have any interest in individually controlling the action. By pursuing his own interest in the case, the named plaintiff will adequately represent the interests of the entire class.
Third, judicial efficiency is served by concentrating the litigation in one forum rather than spreading it throughout numerous courtrooms across the country, thereby clogging court dockets and requiring needlessly chronic efforts on the part of lawyers for plaintiff as well as lawyers for the defendant. In addition, as previously discussed, joinder would be geographically impracticable because class members are spread across the country.
The only remaining concern in this case is the issue of manageability. Manageability most commonly defeats a finding of superiority when there is a need to litigate numerous individual questions of law and fact. See In re Jackson Nat'l Life Ins. Co. Premium Litig., 183 F.R.D. 217, 221 (W.D.Mich. 1998). In Zarrella this Court found that a class action was unmanageable because "widely variant" laws of other states would govern the claims of the proposed class members. See Castano v. American Tobacco Co., 84 F.3d 734, (5th Cir. La. 1996).
This is not the case here because, as the Court stated above, there is nothing to show that widely variant state law must be applied to any individual claim in this case. Under Rhode Island choice of law rules, this Court will apply Nebraska law to the class claims. If this proves to be inappropriate, the Court has described some tools it may employ to maintain the manageability of this case with regard to the applicable law. Further, commonality of fact is well-established in this case, leaving no issue of manageability with respect to questions of fact. Thus, manageability is satisfied under Rule 23(b)(3)(D), as are the other requirements of this section, and class certification is appropriate in this case.
After careful review of the arguments submitted by the parties in this case, this Court finds that plaintiff has satisfied the requirements for class certification as set forth in Rule 23 of the Rhode Island Rules of Civil Procedure. Thus, the Court deems class certification appropriate in this case. Plaintiff's counsel shall present an appropriate order.
[1] Originally, Assunta Iaciofano was the second named plaintiff in this case. She settled her claim against Lincoln on November 23, 2001.
[2] The affected policy-holders actually number 1,189 rather than 1,187, but Lincoln already agreed to correct the Rate and Cap applied to one of the proposed class member's Policy for the 1998-1999 contract year and has settled with one of the originally named plaintiffs in this action.
[3] The Court emphasizes that its discussion of aggregated claims is for practicality purposes only and does not go to the legal issue of jurisdiction of the Superior Court in this case.
[4] The Court in Freitas v. First N.H. Mrtg. Corp,, C.A. 98-211ML, 1998 U.S. Dist. LEXIS 15698, at *10 (D.R.I. July 23, 1998) distinguishes a separate and distinct claim from a common and undivided interest by explaining that "an identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." Freitas v. First N.H. Mrtg. Corp, C.A. 98-211ML, 1998 U.S. Dist. LEXIS 15698, at *10 (D.R.I. July 23, 1998) (quoting Sellers v. O'Connell, 701 F.2d 575, 579 (6th Cir. 1983)).
[5] Refer to pages 11-13 hereinafter for further discussion of this issue.