851 So.2d 908 (2003)
POST, BUCKLEY, SCHUH & JERNIGAN, INC., Appellant,
v.
MONROE COUNTY, etc., Appellee.
No. 3D02-2066.
District Court of Appeal of Florida, Third District.
August 13, 2003.
Patrick C. Barthet, Miami, and Andrew M. Feldman, for appellant.
Wayne LaRue Smith, and Seth David Corneal, Key West, for appellee.
Before GODERICH, GREEN, and RAMIREZ, JJ.
*909 RAMIREZ, J.
Post, Buckley, Schuh & Jernigan, Inc. ("PBS & J") appeals a final order and judgment in favor of Monroe County in a breach of contract action. We reverse the jury award because it was not properly instructed on the duty PBS & J owed the county in providing an accurate estimate on the cost to complete a road project.
The dispute between the parties arose because PBS & J over-estimated the cost to raise the level of Card Sound Road, which led the county to float a bond in excess of what was needed to complete the project. Part of the dispute centered on the fact that the parties entered into two contracts, one in 1981, and another in 1992. Although both contracts were general services agreements, they differed in important respects. In the 1992 agreement, the county acknowledged that PBS & J's costs of construction and operation would not necessarily be the same as the actual costs incurred by the county. PBS & J also agreed to indemnify the county for its losses and judgments and claims for property damage and for injury to death of persons brought or recovered against the county by reason of any negligent act, error, or omission of PBS & J's employees or subcontractors. The county also acknowledged in the 1992 agreement that the estimates of probable construction cost could not be guaranteed.
PBS & J provided the county with four cost scenarios for the Card Sound project. In September 1992, the county issued bonds to fund the project. Four months later, prior to determining the actual costs of the project, and prior to obtaining any bids on the costs of the project, the county floated a municipal bond issue in the amount of $4,585,000.00. Bids went out in July 1993. The winning bid was for an amount considerably less than the estimates provided. In fact, the county had sufficient funding without recourse to issuing the bonds. The county then released its bond obligations and sought reimbursement from PBS & J for the unnecessary financing expenses.
The county filed suit against PBS & J alleging breach of contract for failure to provide reasonable and accurate cost estimates, breach of contract for failure to indemnify Monroe County and professional malpractice.[1] PBS & J raised the defense that the county failed to avoid the consequences arising out of the breach.
At trial, the jury found that both the 1981 and 1992 agreements applied and that PBS & J had breached its contract with the county. The jury thus awarded the county the sum of $233,640.00. PBS & J raises seven issues on appeal and the county raises two on cross-appeal. We discuss only those that have merit.
The issue of what duty PBS & J owed the county in providing estimated costs of the Card Sound road-raising project was hotly contested at trial. The jury was instructed, in relevant part, as follows:
It is the general duty of an engineer to be reasonably accurate in providing estimated costs of a project, even when the contract between the engineer and the client contains a warranty disclaimer clause stating that the engineer does not guarantee the accuracy of cost estimates.
This instruction basically removed the relevance of the disclaimer clause contained in the agreements from the jury's consideration. The jury could ignore the disclaimer *910 clause if it found that the engineer did not provide reasonably accurate estimated costs. The jury, however, should have been permitted to utilize the disclaimer clause as one of the criteria in determining: (1) whether the engineer was contractually obligated to provide reasonably accurate estimated costs so as to create liability when the county proceeded to float the bond prior to determining the actual costs of the project and prior to obtaining any bids on the costs of the project; (2) whether the engineer provided reasonably accurate estimates, considering the disclaimer clause; and (3) whether the county could ignore the disclaimer clause and expedite the issuance of the bonds.
At trial, PBS & J proposed a more neutral jury instruction derived from Lochrane Eng'g, Inc. v. Willingham Realgrowth Inv. Fund, Ltd., 552 So.2d 228, 232 (Fla. 5th DCA 1989):
The duty imposed by law upon professionals rendering professional services is to perform such services in accordance with the standard of care used by similar professionals in the community under similar circumstances.
The county argues that PBS & J had a duty to provide cost estimates within reasonable proximity to the cost of the project, notwithstanding the disclaimer language that such estimates are not guaranteed. The county relies upon several cases from other jurisdictions in support of this proposition. See Durand Assoc., Inc. v. Guardian Inv. Co., 186 Neb. 349, 183 N.W.2d 246, 250-51 (1971); Williams Eng'g, Inc. v. Goodyear, 496 So.2d 1012 (La.1986); Zannoth v. Booth Radio Stations, 333 Mich. 233, 52 N.W.2d 678 (1952); Kostohryz v. McGuire, 298 Minn. 513, 212 N.W.2d 850 (1973). We find that those cases are inapposite.
In each of those cases, the architect or engineer had grossly underestimated the cost of the project. The courts held that an architect or engineer may breach his or her contract by underestimating the actual cost if the cost overrun is unreasonable. See Durand, 183 N.W.2d at 251 (where bids were received in excess of $600,000.00 and the estimated initial construction cost was $420,000.00); Williams, 496 So.2d at 1017 (where the actual construction cost was $888,688.00, more than double the estimated construction cost of $409,300.00); Zannoth, 333 Mich. at 244, 52 N.W.2d 678 (where the project's ultimate construction cost was $100,000.00 more than first anticipated); Kostohryz, 212 N.W.2d at 850-51 (where the project's construction cost was $20,000.00 more than the estimated construction cost). In this case, the county claims that PBS & J breached the contract because PBS & J's estimates were too high. However, the county does not cite to any case which holds an engineer responsible for overestimating the construction cost of a project.
The county argues that the absence of Florida cases dealing directly with a professional engineer's duty in providing cost estimates leads to the conclusion that evidence of reasonable methods, while possibly providing a defense if accepted by the jury, is immaterial if the end result relied upon ultimately causes the damage giving rise to a cause of action. The county's reliance on a number of Florida cases for this proposition is likewise misplaced. See Bay Garden Manor Condo. Assoc., Inc. v. James D. Marks Assoc., Inc., 576 So.2d 744 (Fla. 3d DCA 1991); Hewett-Kier Constr., Inc. v. Lemuel Ramos and Assoc., Inc., 775 So.2d 373 (Fla. 4th DCA 2000); Conklin v. Cohen, 287 So.2d 56 (Fla.1973). None of the cases, however, refer to an engineer's duty to provide a reasonably accurate estimate.
*911 On this basis, we reverse the final order and judgment entered in the county's favor and find it unnecessary to address the remaining issues raised on appeal.
Reversed and remanded for a new trial.
NOTES
[1] The malpractice action was eliminated by summary judgment under the economic loss rule.